U C LEASING, INC., A CORPORATION, APPELLANT, *v.*
DONALD J. LAUGHLIN, RESPONDENT.

No. 9542

February 6, 1980                                         606 P.2d 167

---

*Donald W. Haley,* Las Vegas, for Appellant.

*Morris & Wood,* Las Vegas, for Respondent.

## OPINION

By the Court, BATJER, J.:

Appellant and respondent entered into a contract in which appellant purported to "lease" respondent an airplane. When respondent defaulted in the monthly payments required by the contract, appellant repossessed the plane, which was later sold. Appellant brought suit seeking the difference between the

money due under the contract and the proceeds received from the sale. In denying relief, the district court held the contract to be a lease intended for security subject to the Uniform Commercial Code—Secured Transactions (NRS 104.901–104.9507, inclusive), and, since appellant refused respondent's offer to fulfill the terms of the contract by redeeming the airplane, appellant was precluded from recovering a deficiency.

Appellant claims on appeal that the district court erred because (1) the contract was a "true lease" rather than a lease intended as a security agreement; (2) there was no offer to redeem the plane; and (3) even if there had been an offer to redeem, such offer does not preclude recovery of a deficiency. We disagree.

1. A consideration of the facts is necessary to determine if the document involved in this case is a true lease or one intended as a security agreement.[1] The "lease", hereinafter referred to as the contract, was to run for five years with a monthly rental of $1,144. At the end of that period, lessor (appellant) was to regain possession of the aircraft. However, at any time during the life of the contract, if, in the reasonable and good faith judgment of lessee (respondent), the plane became unsuitable for use by him, he could then, in good faith and at arms length, sell the aircraft to a third person. Upon such sale lessee would be entitled to the proceeds of the sale if he paid lessor the amount then owing under the contract plus $5,500. The amount then owing under the contract was to be determined by reference to a percentage chart attached to it. The more rent paid, the smaller the percentage of the original purchase price ($55,000) lessee must pay lessor. If the proceeds of the sale did not return to lessor the amount then owing plus $5,500, lessee would be required to compensate lessor for the difference.

If the contract was prematurely terminated, lessee would be liable to lessor in the dollar amount equal to the percentage of lessor's original purchase price as revealed by the percentage chart.[2] Pursuant to the contract, lessee was to bear all risk of loss, pay all taxes and fees, and pay insurance premiums to an

---

[1] The contract recites that it shall be construed and interpreted under the laws of the State of Tennessee. Althouth Tennessee has adopted the identical provisions of the Uniform Commercial Code as has Nevada (at least so far as the provisions which are relevant to this case), neither our research nor the research of the parties has revealed any Tennessee cases which are dispositive of the issues involved in this case.

[2] The "lease" could be terminated, at the option of the lessor, if the lessee failed to pay rent, became insolvent, ceased to do business, committed an act of bankruptcy, or if lessor reasonably deemed itself insecure.

insurer specified by lessor. Appellant disclaimed all implied or expressed warranties.

Although respondent was designated the lessee under the contract, the true beneficiary of the arrangment was FDR Corporation, a corporation in which lessee was the president and a member of the board of directors at the time the contract was executed.[3] The printed "lease" form prohibited subleasing, but the parties agreed to a provision allowing for the subletting of the craft to FDR. The evidence presented at trial revealed that appellant "leased" the plane for FDR's benefit yet required respondent to sign the contract because of the latter's superior financial position. The plane was delivered directly to FDR and, of the nine monthly payments made before default occurred, all were paid by FDR directly to appellant.[4] Until appellant's repossession, FDR had sole possession of the aircraft.

While a true lease is not subject to the provisions of Nevada's Uniform Commercial Code, a lease intended as a security instrument is. *See* NRS Chapter 104.

Guidance in determining if a purported lease is one intended for security is found in NRS 104.1201(37):

> Whether a lease is intended as security is to be determined by the facts of each case; however,
>
> (a) The inclusion of an option to purchase does not of itself make the lease one intended for security; and
>
> (b) An agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security.

Although the above section indicates a measuring device by which a lease is or is not deemed a security instrument, the final determination should be gleaned from the intent of the parties as revealed by the facts of each case. Lease Finance, Inc. v. Burger, 575 P.2d 857, 859 (Colo.App. 1977). If there exists a purchase option for "nominal consideration", then the lease is

---

[3]Respondent, who had at one time been the sole shareholder, had sold FDR a few months prior to this transaction. However, since payment was in the form of a promissory note, respondent remained as president in order to assure future payments.

[4]FDR and appellant negotiated approximately ten other airplane transactions. Respondent was not a party to those transactions. FDR sold some of those planes. When FDR became bankrupt, appellant treated all the remaining planes in the same manner, including the one "leased" by respondent.

one intended for security within the exception found in the language of NRS 104.1201(37)(b).

One test used by the courts in determining whether a lease is one intended for security is to compare the purchase option price to the total rentals. In re Crown Cartridge Corp., 220 F.Supp. 914 (S.D.N.Y. 1962), a purchase option of 7.7 percent was held to make the lease one intended for security. In In re Herold Radio & Electronic Corp., 218 F.Supp. 284 (S.D.N.Y. 1963), aff'd, 327 F.2d 564 (2nd Cir. 1964), the same result was reached with a 10 percent purchase.

Neither party proffered evidence of the fair market value of the plane at the end of the lease period or at the time of trial. It was impossible for the trial court to use the fair market value criteria to determine if the plane could have been purchased for nominal consideration. *Cf.* Granite Equip. Leasing Corp. v. Acme Pump Co., Inc., 335 A.2d 294 (Conn. 1973); Davis Bros. v. Misco Leasing, Inc., 508 S.W.2d 908 (Tex.Civ.App. 1974). Here, at the end of the contract the airplane could have been purchased for $5,500, which was 10 percent of the purchase price. Appellant argues that such amount is not "nominal consideration"; therefore, the lease is not one intended as security. This argument is not supported by the evidence or by the authorities.

A review of the contract reveals that it contains many other features which indicate that it was intended for security. For example, when a lessee bears the entire risk of loss, theft, damage or destruction and no such loss relieves the lessee of his obligation to pay rent; or when a lessee must provide insurance against loss, theft or damage of the leased equipment; or when a lessee is required to indemnify the lessor against and hold harmless from all claims and liabilities arising in connection with the equipment; or when a lessee must pay all charges, taxes and fees imposed on the leased equipment, then these facts point towards a lease intended as security rather than a true lease. Leasing Service Corp. v. Am. Nat'l Bank & Trust Co., 19 U.C.C. Rptr. 252, 260 (D.N.J. 1976). *Cf.* Nevada National Bank v. Huff, 94 Nev. 506, 582 P.2d 364 (1978). Furthermore, the fact that the respondent disclaimed all warranties, expressed and implied, weighs in favor of a lease intended as security. Woco v. Benjamin Franklin Corp., 20 U.C.C. Rptr. 1015, 1023 (D.N.H. 1976).

The district court considered all of the above factors. In the final analysis, it held that this "lease" was one intended as

security because the total rentals to be paid plus the option price ($5,500) equaled the original purchase price of the plane plus interest and/or carrying charges. 1973 Duke L.J. 909. *Also see Equipment Leasing 1976* (PLI. 1976) 7–105.

A simple solution may be found by referring to the Uniform Conditional Sales Act, a predecessor of the UCC.[5] 1973 Duke L.J. 909, *supra.* According to UCSA § 1(2), a lease is in reality a conditional sale, and therefore subject to the rules of the UCSA, when it is a

> . . . contract for the bailments or leasing of goods by which the bailee or lessee contracts to pay as compensation a sum substantially equivalent to the value of the goods, and by which it is agreed that the bailee or lessee is bound to become, or has the option of becoming the owner of such goods upon full compliance with the terms of the contract.

Using this test as an aid to interpret NRS 104.1201(37) it is clear that if a lease (1) requires the lessee to complete the lease; (2) provides that the total rentals plus option, if any, equals the purchase price of the goods; and (3) provides that the lessee must become the owner at the expiration of the lease, or has an option to become the owner, then it is presumed, unless there is convincing evidence otherwise, that the parties intended the lease as security. 1973 Duke L.J. 909, *supra;* Dekoven, 12 U.S.F.L. Rev. 257 (1978).

The Internal Revenue Service uses this test as one of its means to ascertain if the transaction is a lease or a sale. *See* Rev. Rul. 55–540. Courts in other jurisdictions have used a similar formula when deciding this issue. *See* O.P.M. Leasing Services, Inc. v. Homestead Fabrics, Inc., 18 U.C.C. Rptr. 1342 (N.Y.Sup.Ct. 1976); In re Transcontinental Indus. Inc., 3 U.C.C. Rptr. 235 (N.D.Ga. 1965); Leasing Services Corp. v. Am. Nat'l Bank & Trust Co., *supra* at 259–60; In re Vaillancourt, 7 U.C.C. Rptr. 748 (D.Maine 1970).

The district court did not err in finding the contract to be intended as an instrument for security. Respondent was required to perform the contract. The rental payment plus the

---

[5]In the article found in the Duke Law Journal, Peter F. Coogan contends that the key to interpreting the UCC is to refer to prior uniform laws, especially the UCSA. The Tennessee Supreme Court has cited the Coogan article, with apparent approval, in U.S. Fid. & Guar. Co. v. Thompson & Green Mach. Co. Inc., 568 S.W.2d 821, 825 (Tenn. 1978).

option price equaled the purchase price plus approximately eleven percent interest, and the respondent for all practical purposes had an option to become owner of the aircraft. Consequently, the district court correctly found that the lease is subject to Nevada's Uniform Commercial Code (NRS Ch. 104).

2.   As an alternative, appellant argues that the respondent never offered to redeem the aircraft. However, in the record there is evidence to support the finding by the district court of an offer of redemption. We will not interfere with such a finding. Tamagni v. Tamagni, 93 Nev. 194, 562 P.2d 481 (1977); Landex, Inc. v. State ex rel. List, 94 Nev. 469, 582 P.2d 786 (1978).

3.   Finally, appellant asserts that even if an offer to redeem was rejected, recovery of a deficiency is not precluded. The courts in both Tennessee and Nevada recognize that creditor misconduct should not always be an absolute bar to a deficiency judgment. Levers v. Rio King Land & Inv. Co., 93 Nev. 95, 560 P.2d 917 (1977); Investors Acceptance Co. of Livingston, Inc. v. Talcott, Inc., 454 S.W.2d 130 (Tenn.App. 1969). However, appellant's reliance on *Levers* in support of its contention is misplaced. Although in *Levers* we allowed a creditor to recover a deficiency if the fair market value of the equipment at the time of the misconduct was less than the debt outstanding on the equipment, we nevertheless held that the creditor must produce evidence to establish the reasonable value of the equipment; otherwise, it will be presumed that the collateral had a fair market value equal to the amount of the debt and no deficiency will be permitted.

In this case, appellant produced no evidence indicating the fair market value of the airplane at the time the respondent's offer of redemption was refused, thus a deficiency should not be permitted and appellant is not entitled to recover.

The judgment of the district court is affirmed.

MOWBRAY, C. J., and THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.