BURROUGHS CORPORATION, Appellant, *v.* CENTURY STEEL, INC., Respondent.

No. 14151

June 9, 1983                                    664 P.2d 354

[Rehearing denied October 20, 1983]

*Weiner, Waldman & Gordon, Ltd.,* Las Vegas, for Appellant.

*George D. Frame,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal from a judgment in favor of Century Steel, Inc. (Century Steel) on a breach of contract action which it brought against Burroughs Corporation (Burroughs). Although Burroughs argues that no privity of contract existed between it and Century Steel we hold that the parties were bound by their Equipment Sales Agreements. Additionally, we find that substantial support exists in the record for the lower court's ruling that Burroughs breached those agreements by its failure to deliver and install a "workable" computer software system. Nevertheless, the lower court's ruling regarding certain storage fees is clearly erroneous. Accordingly, we reverse the lower court's judgment as to the award of storage fees but affirm it in all other respects.

Century Steel manufactures and sells steel bars. On December 26, 1975, Century Steel agreed to purchase from Burroughs a mini computer and accompanying program software. On appeal the parties agree that the written, signed contract was subject to an oral condition precedent that Century Steel obtain financing for the acquisition of the computer and software.

The first leasing company contacted, National Equipment Rental, Ltd., denied Century Steel's request for financing on February 26, 1976. Eventually, Nevada National Leasing Co., Inc. (Nevada National) agreed to purchase the mini computer and software from Burroughs and lease the equipment to Century Steel for sixty (60) months. Lynn Leany, President of Century Steel, authorized the lease on April 8, 1976. Nevada National assigned the lease to Equilease Corporation (Equilease) on August 13, 1976.

Leany testified that although Burroughs had promised that the computer and software would be delivered in February, 1976, the equipment was not installed until April, 1976. By December of 1976, however, Century Steel was totally dissatisfied with the computer and software. At some point after December, 1976, Century Steel moved the Burroughs computer

out of its office to a mini warehouse in Henderson and had a Wang computer installed.

On December 27, 1977, Equilease filed a complaint against Century Steel which alleged nonpayment of rent for 1977. Equilease prayed that the entire amount of rent be adjudged due and payable and that it be allowed to repossess the equipment and sell it pursuant to the security interest created by its predecessor, Nevada National. On January 19, 1977, Century Steel filed a third party complaint against Burroughs which alleged a breach of the December 26, 1975, contract between Century Steel and Burroughs. On May 8, 1979, the lower court granted Equilease's motion for summary judgment for acceleration of the total amount of rent due, costs of attorneys' fees and pre and post judgment interest. Century Steel's third party complaint, however, continued to trial. On April 9, 1982, the lower court entered its judgment in favor of Century Steel. The trial judge held that Century Steel was entitled to recover from Burroughs all rental payments Century Steel had made to Nevada National and its assigns, the amount of the May 8th summary judgment paid to Equilease, maintenance costs and storage costs. Burroughs timely appealed this judgment.

On appeal, Burroughs' primary contention is that, for several reasons, it was not in privity of contract with Century Steel. Essentially, Burroughs claimed that it *sold* the computer equipment to Nevada National which, in turn, *leased* the equipment to Century Steel. The court below found that Burroughs and Century Steel executed two equipment sale contracts on December 26, 1975, for the purchase of a mini computer and software and that Burroughs subsequently *sold those contracts* to Nevada National.

The trial court erred in characterizing the transaction between Nevada National and Burroughs as a sale of equipment sales contracts.[1] Although the agreement between Nevada National and Century Steel purports to be a "lease," it is apparent that the parties simply intended Nevada National to provide financing for Century Steel's acquisition of a computer from Burroughs.

In Atlas Industries, Inc. v. National Cash Register Co., 531 P.2d 41 (Kan. 1975), the Kansas Supreme Court found the following factors helpful in determining the "true nature" of a remarkably similar leasing arrangement:

---

[1]This error, however, does not affect the result reached by the trial court. It is established that this court can affirm a lower court's ruling on different grounds. Hotel Riviera v. Torres, 97 Nev. 399, 632 P.2d 1155 (1981).

(a) The equipment ordered was shipped and installed by NCR: U.S. Leasing did not select or inspect the equipment; . . . (c) U.S. Leasing was not a manufacturer or dealer in like equipment; (d) the monthly payments under the lease were calculated to return to U.S. Leasing the purchase price, sales tax, and interest; (e) it was not contemplated that the equipment would be returned to U.S. Leasing; and (f) the renewal rental was for a nominal amount and extended to a period beyond the usable life of the equipment.

*Id*. at 43. *See also* Citicorp Leasing, Inc. v. Allied Institutional, 454 F.Supp. 511 (W.D.Okla. 1977); CIT Financial Services, Inc. v. Gott, 615 P.2d 774 (Kan.App. 1980). In U.C. Leasing, Inc. v. Laughlin, 96 Nev. 157, 606 P.2d 167 (1980), this court, in determining that Article 9 of the U.C.C. was applicable, listed the following factors as indicative of the parties' true intentions regarding an alleged lease agreement: (a) that the lessee bears the entire risk of loss, theft, damage or destruction and no such loss relieves the lessee of his obligation to pay rent; (b) that the lessee must provide insurance against loss, theft or damage of the leased equipment; (c) that the lessee is required to indemnify the lessor against and hold him harmless from all claims and liabilities arising in connection with the equipment; (d) that the lessee must pay all charges, taxes and fees imposed on the leased equipment; and (e) that the lessor disclaimed all warranties, expressed or implied. *Id*. at 161, 606 P.2d at 170. *See also* Las Vegas Auto Leasing, Inc. v. Davis, 98 Nev. 169, 643 P.2d 1217 (1982).

In the present case, the ''lease'' agreement between Nevada National and Century Steel required the latter, as lessee, to: (1) pay all personal property taxes, maintenance, insurance and other costs and expenses and obligations of every kind and nature relating to the equipment; and (2) agree to indemnify and hold the lessor harmless from any claims, actions or liability arising from the use, operation, maintenance or condition of the equipment. The lessee received the benefit of any manufacturer's or supplier's warranties and no defect or unfitness of the equipment or failure to perform by the supplier relieved the lessee of its obligation of payment.

According to the lease, Nevada National, as Lessor: (1) did not make any representations or warranties with respect to the condition, quality, fitness or merchantability of the equipment; (2) was not liable to lessee for any damage or liability caused by the equipment; and (3) did not assume any liability for any loss

or damage due to delays in delivery or supplier's failure to properly install or assemble the equipment. Additionally, Nevada National did not select or inspect the equipment. Nevada National is not a manufacturer or dealer in like equipment. The equipment ordered by Century Steel was shipped and installed by Burroughs. Under the criteria set out by *Atlas* and *Laughlin,* the "lease" between Century Steel and Nevada National is properly characterized as a purchase-money mortgage financing arrangement. The financing agreement between Century Steel and Nevada National did not indicate that the Equipment Sales Contracts of December 26, 1975, had been abandoned or rescinded by mutual agreement.[2] Thus, privity of contract existed between Burroughs and Century Steel.

Burroughs next contends that the lower court's finding that Burroughs breached the Equipment Sales Contracts by its failure to deliver and install "workable" software systems is clearly erroneous. At trial, the parties presented sharply conflicting evidence regarding the installation and operation of the software programs. Burroughs put on evidence that although they promised delivery of the computer hardware in February 1976, it was not delivered until the financing arrangements were completed by Century Steel in April of that year. Additionally, one of Burroughs' former employees testified that it could take six months to one year to install all the programs Century Steel had ordered. The installation period would have to be expanded if, as did at least three of the Century Steel programs, any of the programs had to be "customized" to fit the customer's needs. Finally, the Burroughs' employee who handled the Century Steel account testified that all programs ordered by contract were installed by August and that, besides

---

[2]Burroughs relies on a gratuitous comment regarding a factually similar case made by the Arizona Court of Appeals in Kalil Bottling Co. v. Burroughs Corp., 619 P.2d 1055 (Ariz.Ct.App. 1980). There, the court ridiculed the parties' presumption that a contract existed between Burroughs and the ultimate user of the computer, Kalil Bottling. The facts indicated to the court that "the parties' conduct constituted a mutual recission of the contract when the computer and software was [sic] purchased by [the leasing company] and leased to Kalil." *Id.* at 1057. This statement, however, is *obiter dictum.* The Arizona court continued that because the general rule prohibits an appellate court from raising, *sua sponte,* an issue not litigated below, the case would be decided "on the theory upon which both parties proceeded below, [i.e., breach of contract between Burroughs and Kalil]." Understandably, we do not find *Kalil* to be persuasive authority. If the Arizona court had the benefit of full briefing on the issue, we believe the more reasoned position would have emerged. That position is that "the true nature and character of a document is not determined by the name attached thereto but by the intent of the parties as reflected by the terms or contents thereof." Atlas Industries, 531 P.2d at 47.

some minor "fine tuning," most of the problems with the system were input errors.

The trial court, however, believed the statements of the president and controller of Century Steel that all of the programs were not installed by August 4th; that Century Steel was totally dissatisfied with the computer by December 1976, in that, the program would not balance the books; and that most of the programs functioned very badly. Additionally, the controller who had previous computing experience with two former employers testified that problems with the computer system were programming errors. In the face of conflicting evidence, the trial court's factual determinations will not be disturbed on appeal if they are supported by substantial evidence. Sierra Creek Ranch v. J. I. Case, 97 Nev. 457, 634 P.2d 458 (1981). The record on appeal contains substantial evidence in support of the lower court's findings that Burroughs failed to timely deliver and install a "workable" computer software system.

Finally, Burroughs argues that the lower court's findings regarding certain storage fees are without substantial support in the record. The lower court found that Century Steel had, in fact, placed the computer in storage on February 1, 1977; that Century Steel had incurred the sum of $2,970.00 for storage through April 30, 1982; and that Century Steel would continue to incur damages of $46.00 each month for storage fees until Burroughs accepted the computer. Century Steel obtained judgment on the above-mentioned sums.

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. Kenney v. Greer, 99 Nev. 40, 656 P.2d 857 (1983); NRCP 52(a). There is no testimony in the record which evidenced *the amount* of money expended by Century Steel for storage fees. Century Steel's president simply testified that storage fees had been incurred by his company. Nevertheless, the Record on Appeal does include "Plaintiff's Proposed Exhibit No. 8." The proposed exhibit is a summary of the costs resulting from the defects in the computer. The summary indicates that Century Steel was charged $46.00 per month for storage fees and that Century Steel spent a total of $2,786.00 for storage from February 1, 1977, to December 31, 1981. The proposed exhibit, however, was not admitted into evidence. Thus, the lower court's finding and judgment regarding the storage fees is clearly erroneous. *See* Kenney, *supra*.

All other issues raised by Burroughs have been considered and are without merit. Therefore, we reverse that part of the lower court's judgment which awards Century Steel $2,970.00 for storage fees and $46.00 per month until Burroughs accepts the computer and software but affirm the judgment in all other respects.