SAM PINK AND ANNE PINK, APPELLANTS, *v.* JOSEPH BUSCH, ANN BUSCH, ALBERT J. BUSCH, III; JOHN E. CLARK, JUNE CLARK; JAMES ZELLERS, CAROLE ZELLERS, RESPONDENTS.

No. 14581

December 7, 1984                                 691 P.2d 456

*Oshins, Brown, Singer & Wells, Chartered,* Las Vegas, for Appellants.

*Wiener, Waldman & Gordon,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from judgment following bench trial in which personal guarantors were found to have been released by the obligee from their guarantees. Having reviewed the record, we find that the lower court's alternative legal theories of release, promissory estoppel and novation are without any factual support. The lower court's ruling enforcing the appellants' oral promise to release the guarantors is clearly erroneous. Accordingly, we reverse the judgment below and direct the lower court to enter judgment in appellants' favor in accordance with this opinion.

Sam and Anne Pink founded Pink's Produce Company in 1958. Pink's Produce started as a wholesale produce distribution company. The business expanded, however, until the company was a complete food supplier. Starting in 1975, the Pinks began to consider selling the produce company because of Sam's advancing age and his failing health.

On June 1, 1976, Sam and Anne agreed to sell 100% of their stock in Pink's Produce to a newly-formed corporation known as Pink's Inc. The stated sales price was $400,000. The stock sale agreement also acknowledged that Pink's Produce Company owed Sam and Anne $52,000. Pursuant to the agreement, Pink's Inc. assumed that debt and promised to pay the balance to Sam and Anne over a 10 year period. At the time of the sale, the corporate officers of Pink's Inc. were: Joseph Busch, president; his wife, Ann, secretary/treasurer; and his brother, Albert, vice-president. Albert, Joseph and Ann Busch also personally guaranteed Pink's Inc.'s indebtedness to Sam and Anne Pink.

Joseph Busch was at the time of the sale vice-president of the Convention Center Branch of First Interstate Bank of Nevada. For approximately 12-14 years, Joseph Busch had served as Sam's and Anne's banker. Joseph had planned to retire from the bank and to manage Pink's Inc. Unfortunately, Joseph was not able to participate in the management because his retirement plan at the bank had not vested. The Busches hired several managers for Pink's Inc. but they apparently were unsatisfactory. On September 28, 1978, *Albert* Busch sold Pink's Inc. to John E. Clark and James R. Zellers.

The 1978 stock sale agreement recites that *Albert* owned 100% of the stock of Pink's Inc. and that the selling price was $140,000. Additionally, the contract acknowledged that at the time of the sale Pink's Inc. still owed Sam and Anne $293,608 on the 1976 contract and $43,621 on a loan that Sam and Anne had made to Pink's Produce Company. Pursuant to the 1978 contract, John and June Clark and James and Carole Zellers personally guaranteed any indebtedness Pink's Inc. and Albert Busch owed to Sam and Anne Pink. Finally, the parties to the 1978 contract promised to use their best efforts to obtain a release of the personal guarantees of Joseph and Ann Busch for their indebtedness to Sam and Anne Pink under the earlier purchase agreement.

Sam and Anne Pink received the last installment payment from Pink's Inc. in March, 1979. On September 10, 1979, the Pinks sued the Busches, the Clarks and the Zellers on their personal guarantees. Later, the Clarks and the Zellers sued Albert Busch for fraud. Both cases were consolidated for trial. Before trial, however, the Pinks obtained a default judgment against Albert Busch and summary judgments against the Clarks and the Zellers. The Clarks' and the Zellers' complaint alleging fraud against Albert Busch was apparently dismissed by the lower court's summary judgment against a similar cross-claim they had raised against the Busches. The Pinks allege that all the judgments they have obtained remain unsatisfied.

The only claims remaining for trial, then, involved the Pink's original cause of action against Joseph and Ann Busch on their personal guarantees. Following a bench trial, the lower court found either that Sam Pink had released the Busches from their guarantees or that the 1978 agreement between Albert Busch, John Clark and James Zellers constituted a novation of the Busches' personal guarantees. Sam and Anne Pink have appealed this decision.

1. *Release of Guarantors.*

On sharply conflicting testimony, the lower court found that Sam Pink orally promised to release Joseph and Ann Busch from their guarantees. The Pinks do not challenge this ruling. Instead, they contend that any oral release Sam may have made was not enforceable because it was not supported by legal consideration. In reponse, the Busches note that the lower court found that the oral release was supported by the Clarks' and the Zellers' subsequent execution of their personal guarantees of Pink's Inc.'s indebtedness to the Pinks.

The agreement of a creditor to release a guarantor from liability under a guaranty contract is binding upon the creditor only if the agreement possesses the elements of a contract. 38 Am. Jur.

2d *Guaranty* § 80 at 1087 (1968). Releases, then, must be supported by consideration. *See* New England Merchants Nat. Bank v. Rosenfield, 679 F.2d 467 (5th Cir. 1982); Federal Rubber Co. v. Pruett 98 P.2d 849 (Ariz. 1940); Tally v. Atlanta Nat. Real Estate Trust, 246 S.E.2d 700 (Ga.App. 1978), *aff'd,* 253 S.E.2d 692 (Ga. 1979); Annot., *Creditor's release of, or promise to release, guarantor as affected by existence or sufficiency of consideration,* 126 A.L.R. 1241 (1940). "To constitute consideration, a performance or return promise must be bargained for. A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." Restatement (Second) of Contracts § 71(1), (2) (1982). *See also* Berge v. Fredericks, 95 Nev. 183, 591 P.2d 246 (1979) (For marriage to constitute consideration for purposes of recording act it "must be bargained for and exchanged in return for that received").

The record in the present case reveals that no "bargained for exchange" occurred between Joseph Busch and Sam Pink. Admittedly, the Clarks' and the Zellers' guarantees ran to the Pinks' benefit. Joseph Busch testified that he and Sam Pink discussed the impending sale of Pink's Inc. to Clark and Zellers several times and that Sam Pink promised to release him from the guarantee. At that time, however, Joseph Busch did not hold any stock in Pink's Inc. nor was he a director or officer of that corporation. Busch admitted that he was not involved in the negotiations which resulted in the 1978 sales contract or in procuring the Clarks' and the Zellers' personal guarantees. *Albert* Busch, as the sole owner of Pink's Inc., was responsible for the sales negotiations. Moreover, the "best efforts" clause contained in the 1978 agreement indicates that the Clarks and the Zellers realized that their guarantees were not given in exchange for the discharge of the Busches from their guarantees.

Findings of fact shall not be set aside unless clearly erroneous. Where there is no evidence in support of the lower court's findings, they are clearly erroneous and may be reversed. Burroughs Corp. v. Century Steel Inc., 99 Nev. 464, 470, 664 P.2d 354, 358 (1983). Thus, the trial court's finding regarding consideration for Sam's release was clearly erroneous.

2. *Promissory Estoppel.*

Alternatively, the lower court found that Sam Pink was estopped from denying the release of the Busches from their guarantees. Sam and Anne Pink argue that the lower court's finding was clearly erroneous because there is no evidence of justifiable reliance by or detriment to Joseph and Ann Busch. The

Busches respond that Joseph did, in fact, rely on the release to his detriment because he did not intervene in the management of Pink's Inc. as it slid into bankruptcy.

Promissory estoppel, of course, can be used as a "consideration substitute" to support the release of liability under a guaranty contract. *See* Tally v. Atlanta Nat. Real Estate Trust, 246 S.E.2d 700 (Ga.App. 1978). "To establish promissory estoppel four elements must exist: (1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped." Cheqer, Inc. v. Painters & Decorators Joint Committee, Inc., 98 Nev. 609, 614, 655 P.2d 996, 998-999 (1982). Here, Joseph Busch merely asserted that he relied on the release. We, however, are unable to ascertain from the record on appeal in what manner Joseph relied on Sam's oral promise to release Joseph from his personal guarantee. Joseph testified that he never owned any stock in Pink's Inc. He also stated that he had decided to stay with the bank to protect his retirement and that he never managed or took an active role with Pink's Inc. Moreover, when Pink's Inc. declared bankruptcy on July 17, 1979, it was owned by John Clark and James Zellers. Thus, the lower court's finding that Joseph Busch relied on Sam's oral promise to release the Busches was clearly erroneous. Burroughs Corp. v. Century Steel, Inc., 99 Nev. 464, 470, 664 P.2d 354, 358 (1983).

3. *Novation.*

The lower court's final theory for enforcing Sam's release of the Busches from their guarantees was premised on its finding that Sam intended that the Clarks' and the Zellers' guarantees be substituted for and discharge the Busches from their guarantees. The Busches argue that the novation occurred when Sam Pink promised to release the Busches, knowing of the 1978 stock sale and of the Clarks' and the Zellers' personal guarantees in his favor. The Pinks contend that this finding was also clearly erroneous.

The substitution of a new obligation for an existing one may be a novation if the first debt is extinguished, all parties are discharged on the first contract, and all parties agreed at the time of the substitution that the creditor's consent constituted a discharge of the original obligor and the new obligor took its place. *See* Zuni Constr. Co. v. Great Am. Ins. Co., 86 Nev. 364, 368, 468

P.2d 980, 982-983 (1970). "The intent of the parties to cause a novation must be clear. Consent to an assignment is not enough." *Id.*

In Miami Nat. Bank v. Forecast Const. Corp., 366 So.2d 1202 (Fla.App. 1979), the failure of the creditor to cancel the original note was held to negate one of the essential elements of a novation—that the parties agreed to extinguish the original debt or obligation. There is no evidence that the Pinks destroyed or canceled the Busches' guarantees or relinquished them to the Busches. Again, the "best efforts" clause contained in the 1978 sales agreement suggests that the Clarks and the Zellers realized that their guarantees were not given in exchange for the discharge of the Busches from their guarantees.

The lower court, however, attempted to bolster the novation theory by creating an inferred acceptance theory of novation. It found that when Sam allegedly released the Busches he was aware of the 1978 contract and of the Clarks' and the Zellers' guarantees. Furthermore, the court found that the Pinks accepted both the payments from the new owners of Pink's Inc. and the new guarantees themselves.

A novation may be inferred by the creditor's acceptance of part performance from the new obligors. *See* Nev. Bank Comm. v. Esquire R. E., Inc., 86 Nev. 238, 241, 468 P.2d 22, 23 (1970). In Jacobsen v. Stern, 96 Nev. 56, 605 P.2d 198 (1980), an architect sued a corporate promoter for money due on architectural services rendered. Although the corporation had accepted the benefits of the services and was liable to the architect, this court held that the promoter was not discharged. This court stated that "to constitute a valid novation, however, the creditor must assent to the substitution of a new obligor, but this assent may be inferred from his acceptance of part performance by the new obligor, *if the performance is made with the [clear] understanding that a complete novation is proposed." Id.* at 61, 605 P.2d at 201. (Emphasis added.)

In the present case, the payments made by Pink's Inc. on the original sales contract did not constitute part performance by the new obligors. The original sales contract was a *corporate* obligation. The fact that the stock of Pink's Inc. was held by Clark and Zellers is immaterial. Likewise, the Pinks' acceptance of the Clarks' and the Zellers' continuing guarantees does not constitute part performance. It is undisputed that neither the Clarks nor the Zellers have paid the Pinks anything on their personal guarantees. Finding an inferred novation where the creditor was simply

aware of the execution of new guarantees by third parties and did not accept any payments under the personal guarantees is tantamount to forcing new debtors on the creditor. Accordingly, the lower court's finding of a novation is also clearly erroneous. *See* Burroughs Corp. v. Century Steel, Inc., 99 Nev. 464, 470, 664 P.2d 354, 358 (1983).

This court has held that upon reversal, where the material facts have been fully developed at trial and are undisputed such that the issues remaining are legal rather than factual, we will render final judgment or will remand the case to the lower court with directions to enter judgment in accordance with the opinion or with specific directions. Nyberg v. Kelly, 65 Nev. 42, 67-68, 188 P.2d 1006, 1017-18 (1948); Warren v. Wilson, 46 Nev. 272, 284-85, 212 P. 497, 497 (1923); Nixon v. Brown, 46 Nev. 439, 462, 214 P. 524, 532 (1923). *See, e.g.,* Cobb v. Osman, 83 Nev. 413, 433 P.2d 259 (1967). Here, admissions in the pleadings and disputed testimony show that Sam and Anne sold their stock in Pink's Produce Company to Pink's Inc. Pursuant to the stock sale agreement, Pink's Inc. executed two promissory notes in the sum of $350,000 and $52,000. Additionally, Joseph, Ann and Albert Busch personally guaranteed those promissory notes to the amount of $402,000. In March, 1979, Pink's Inc. defaulted on its obligations to Sam and Anne. As of April 1, 1979, the unpaid balance of principal and interest on the $350,000 note was $279,642.35 and the unpaid balance including principal and interest on the $52,000 note was $41,546.79. None of the guarantors have ever honored their obligations.

We have found Busches' alternative defenses of release, promissory estoppel and novation to be without any factual support. Accordingly, reversal of the lower court's judgment is mandated under the clearly erroneous standard of NRCP 52. Furthermore, the material facts supporting the Pinks' claim on the personal guarantees have been fully developed and are undisputed. Consequently, we hereby order the lower court to enter judgment in favor of appellants, Sam and Anne Pink, and against the respondents, Joseph and Ann Busch, for the sum of $321,189.14, together with interest thereon at the contract rate of 8% per annum from April 1, 1979, until paid.[1]

---

[1]We have not addressed the propriety of attorneys fees or a cost award pursuant to the note signed by the parties. This issue would be more properly handled in the district court.