WAY W. LEE, PRISCILLA D. LEE AND BRYAN D. LEE, APPELLANTS, *v.* VEREX ASSURANCE, INC., AND MISSOURI SAVINGS ASSOCIATION, RESPONDENTS.

No. 17818

December 3, 1987 746 P.2d 140

*Thomas J. Hall,* Reno, for Appellants.

*Bible, Hoy, Miller, Trachok & Wadhams,* Reno, for Respondents.

## OPINION

*Per Curiam:*

In 1979 appellants Way W. Lee, his wife, Priscilla D. Lee, and his brother, Bryan D. Lee, began a joint venture to construct an eighty-four unit condominium complex in Reno. After construction difficulties, the Lees arranged for a loan through respondent Missouri Savings Association in the sum of $3,942,374.26 in May of 1982. As part of the loan package the Lees purchased loan insurance from respondent Verex Assurance.

The complex, initially known as Summersnow condominiums and later as Alpine Vista condominiums, experienced poor sales from a depressed local housing market and other unknown factors. The Lees sold thirty-one condominiums in just over two years, but only with large financial incentives and without profit for the Lees. Missouri Savings instituted nonjudicial foreclosure proceedings on the fifty-three unsold condominiums after the Lees stopped making payments in March of 1983. Missouri Savings, the sole bidder on foreclosure, paid $2,271,050.00 for the fifty-three units on March 14, 1984.[1]

Missouri Savings and Verex instituted an action for a deficiency judgment on May 29, 1984. Verex's appraiser found fair market value for the fifty-three units sold in gross to be $2,250,000.00, or about $42,500.00 per unit. The appraiser found that the individual unit's market value on March 14, 1984,

---

[1]Missouri Savings managed to sell another nine units after foreclosure but before trial. The remaining forty-four foreclosed condominiums were apparently later sold at public auction for $30,000.00 to $39,000.00 per unit.

was closer to $60,000.00, but that no market existed for the condominiums and that the best method for sale on foreclosure would be as a whole. The Lees presented no evidence of Alpine Vista's appraised value that satisfied NRS 40.459.[2] After a bench trial the district court found that the value of the complex was $2,250,000.00. Given a stipulated indebtedness of $3,001,652.36, the court entered a deficiency judgment for $730,653.36. The Lees appeal the amount of the judgment, contending that the court erred in its valuation of Alpine Vista.

District court findings that are based on substantial evidence will not be disturbed on appeal. NRCP 52(a); Leonard v. Stroebling, 102 Nev. 543, 728 P.2d 1358, 1361-62 (1986); Burroughs Corp. v. Century Steel, 99 Nev. 464, 470, 664 P.2d 354, 357 (1982). Because the district court decisions to sell the fifty-three units of Alpine Vista as a block and to value the complex at the appraised values are supported by substantial evidence, we affirm the district court order.

The Lees contend that the district court decision to value Alpine Vista as a whole was improper, and that sale as individual condominiums would have brought a greater return. However, given the dismal sales record of Alpine Vista it appears unlikely that all fifty-three units would have been sold at a foreclosure auction, at least at the price paid by Missouri Savings. The loans involved eighty-four promissory notes, deeds of trust and closing costs and fees. Although the loan was structured so the individual condominium buyer would assume a mortgage only on the purchased unit, all individual notes and deeds of trust on unsold units were subject to a cross-default provision and there is no evidence that the Lees objected to the group foreclosure until after the sale to Missouri Savings. The district court decision to confirm the sale of the complex as a whole is based on substantial evidence, and we affirm that decision on appeal.

The Lees' second contention on appeal is that the district court assigned an erroneous value to Alpine Vista. The Lees argue that Missouri Savings voluntarily funded the loan in 1982 at $60,000.00 per unit based on the expected market value of the complex, but when Missouri Savings acquired the units at the trustee's sale two years later they only paid $42,500.00 per unit. Appellants urge us to place the burden of loss on lenders who

---

[2]For deficicency judgment suits, NRS 40.459 sets fair market value as of the date of sale. The Lees presented two appraisal figures, but the appraisals had been done seventeen and twenty-six months before the trustee's sale, and the appraisals had valued a single unit for FHA and VA loan purposes. Appellants have retained different counsel on appeal.

overvalue property when a loan is made, purchase the property for its actual value at the foreclosure sale and then seek a deficiency judgment to cover their initial error. *See* Rainier Mortg. v. Silverwood Ltd., 209 Cal. Rptr. 294 (Cal.Ct.App. 1985). We decline the invitation to apply California's definition of fair market value and fair value and their allocation of risks between borrower and lender as Nevada's statute and our case law provide a sufficient basis for our decision.

NRS 40.459 provides, in pertinent part, that: "The court shall not render judgment for more than: 1. The amount by which the amount of the indebtedness which was secured exceeds the fair market value of the property sold *at the time of sale . . . .*" (Emphasis supplied). This court has defined fair market value as "the price which a purchaser, willing but not obligated to pay, would pay an owner willing but not obligated to sell, taking into consideration all uses to which the property is adopted and might in reason be applied." Unruh v. Streight, 96 Nev. 684, 686, 615 P.2d 247, 249 (1980). The district court exercised its discretion in determining fair market value and when that determination is supported by substantial evidence, we will not disturb the determination on appeal. Halfon v. Title Ins. & Trust Co., 97 Nev. 421, 423, 634 P.2d 660, 661 (1981); Tahoe Highlander v. Westside Fed. Sav., 95 Nev. 8, 11, 588 P.2d 1022, 1024 (1979).

The district court found an appraised value on March 14, 1984, for the Alpine Vista condominiums of $42,500.00 per unit. The court based its determination on the only competent appraisal before it. The district court apparently considered Reno's depressed housing market in 1984, the fact that only thirty-one units sold in two years,[3] and that the thirty-one units sold for an average price of $64,000.00, which included an average of $12,000.00 in financial incentives.[4]

It would not be sound to base fair market value on the properties' value at the time the loan was made. Economic conditions and property values change, especially in markets sensitive to the economy, like housing. If we were to hold that the value assigned to Alpine Vista on foreclosure should be that established by the parties as of the date of the loan, we would act contrary to NRS 40.459 and discourage investment in real estate projects; we would also undoubtedly force lenders to secure higher equity margins in project loan approvals. Our holding today puts the risk

---

[3]The Lees purchased nine of the thirty-one units sold and seventeen others were purchased by partnerships created to take advantage of tax write-offs and investments. Therefore only five individual consumers were willing to purchase Alpine Vista condominiums in two years.

[4]Because the Lees paid an average of $11,000.00 in interest on each unit before its sale the Lees lost money everytime they sold a unit.

on both borrower and lender: in loan initiation, both must carefully evaluate economic and other conditions in assigning loan to project value ratios and in the unfortunate instance of default and foreclosure, both must provide competent appraisal evidence. *See* Carillo v. Valley Bank, 103 Nev. 157, 734 P.2d 724 (1987).

It was not erroneous for the district court to value the foreclosed condominiums at $42,500.00 per unit. We therefore affirm the district court decision to value Alpine Vista as a complex rather than as fifty-three individual condominiums and also to value the project as of the date of the nonjudicial foreclosure sale at $2,250,000.00. Having perceived no error, we affirm the deficiency judgment entered by the district court.