IN THE MATTER OF THE ESTATE OF DORSEY A. KERN, Deceased. ROBERT D. KERN, RONALD D. KERN, and MARY KERN, Appellants, v. KAY F. KERN, Executrix, Respondent.

No. 21237

December 30, 1991 · 823 P.2d 275

*Michael R. Mushkin & Associates* and *Mark C. Hafer,* Las Vegas, for Appellants.

*Christopher G. Gellner,* Las Vegas; *Vannah, Roark & Costello,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

On April 19, 1985, Dorsey A. Kern (Dorsey), a Nevada resident, executed a will bequeathing most of his personal and real property physically located in Nevada to his wife, Kay Kern (Kay).[1] The will also provided that Dorsey's real and personal property in Colorado, including a ranch in Cheyenne Wells, Colorado, would be placed in a trust which would be administered by Kay as trustee.[2]

On June 27, 1987, Dorsey retained a Las Vegas attorney to form a Nevada corporation named DorKay, Inc. Dorsey and Kay each owned fifty percent of the shares in the corporation. On June 29, 1987, the directors of the corporation held their first meeting.[3] At the meeting, which took place in the attorney's office, it was decided that the corporation would issue 2,500 shares of capital stock to Dorsey and Kay in exchange for all right, title,

---

[1]Kay Kern was Dorsey Kern's second wife. They were married on February 28, 1982. Appellants are Dorsey's children from his first marriage.

[2]Under the terms of the trust, Kay was to receive the income from the Colorado properties for the rest of her life or until she remarried, at which time the trust would terminate and the undistributed income and corpus would be paid to Dorsey's adult children.

[3]DorKay, Inc.'s board of directors consisted of two members: Dorsey and Kay Kern.

and interest in the Cheyenne Wells ranch. The minutes stated in pertinent part:

> After due consideration of the offer and by unanimous vote, the following resolution was adopted:
> WHEREAS, DORSEY A. & KAY F. KERN[4] has [sic] offered to transfer [the ranch] to this corporation, upon the terms and conditions as more fully appears in the offer which has been heretofore set forth in these minutes in return for the issuance to DORSEY A. and KAY F. KERN . . . 2500 shares of capital stock of said corporation.

(Footnote added.) These minutes were signed on June 29, 1987, as was the "purchase agreement." The purchase agreement, however, was signed only by Kay and offers no specificity, terms, or description of the property in question. It simply states in relevant part:

> The propert [sic] situated in Cheyenne Wells Colo described as followes [sic]. Abstracts to same have been approved to transfer property into DorKay Corporation.
> It is resolved that all mineral, oil, gas rights herewithin [sic] as described in the abstracts go with the land purchased by DorKay Corporation.

Although the corporation transferred the 2,500 shares of stock to Dorsey and Kay as joint tenants with the right of survivorship, the real property was never transferred to the corporation.

Dorsey died on April 4, 1989, and Kay was appointed as executrix of the estate. She sought an order from the district court to complete conveyance of the Cheyenne Wells ranch from Dorsey's estate to DorKay, Inc. Such conveyance would render complete title to Kay as the sole shareholder of DorKay, Inc. Even though the corporation was not a party to this suit and the estate would not benefit from the transfer, the district court granted the order. We conclude that the district court erred.

NRS 149.110 provides the probate court with discretionary power to make a decree authorizing and directing the executor or administrator of an estate to convey real property to persons entitled, if the decedent: (1) is bound by a written contract to do so; and (2) if living, might have been compelled to make such a conveyance. The statute clearly demonstrates the legislative intent to satisfy the rights of either the estate or a third party in completing a conveyance which has been affected or delayed by the conveyor's death.

---

[4]Kay Kern had no interest in the property.

We conclude that Dorsey was neither bound by a written contract to convey his property, nor could he have been compelled to make the conveyance.[5] Finally, we conclude that Kay, as executrix of Dorsey's estate, has no standing to bring this suit. *Cf.* Washoe Broadcasting Co. v. Neuhoff, 102 Nev. 464, 726 P.2d 338 (1986) (only a party with an actual interest has standing to petition for a sale under NRS 148.090). Although this type of action generally is filed by a third party, the executrix or administrator may seek a conveyance in the best interests of the estate. *Id.* Dorsey's estate, however, had no interest in seeing the Cheyenne Wells ranch transferred to DorKay, Inc. Rather, it was in the estate's best interest to retain the property in the trust. Therefore, the estate was without standing to seek the relief requested.

While we conclude that reversal is warranted on the issue of standing alone, we also find that as a matter of law, an order of specific performance should not have been granted in this case.

In the case at bar, several essential elements of a valid contract are missing. First, neither the corporate minutes nor the purchase agreement adequately indicate the terms of the contract or provide necessary details as to the description of the property. In addition, material terms such as subject matter, price, payment terms, quantity, and quality are either altogether lacking or insufficiently certain and definite to support specific performance. *See* Calamari & Perillo, *Contracts* § 2-9 (3rd ed. 1987). Moreover, there is no adequate consideration binding the parties. DorKay, Inc. offered 2,500 shares of worthless stock (the corporation had no assets) in exchange for valuable property. While courts of law generally need not concern themselves with the adequacy of the consideration, courts of equity must. *See* LaGue v. District Court, 68 Nev. 125, 127, 227 P.2d 436, 437 (1951) (court found that petitioner properly stated cause of action by arguing that alleged contract sought to be specifically enforced was incomplete and neither fair nor reasonable, and that consideration was inadequate). Because the consideration in the case at bar was inadequate, we refuse to violate principles of equity by upholding specific performance.

Finally, the agreement was not signed by the party to be bound. NRS 111.210(1) states that a contract for the sale of land "shall be void unless the contract, or some note or memorandum

---

[5]In order to compel conveyance, Dorsey, in his corporate capacity as President of DorKay, Inc., would have had to sue himself in his individual capacity as owner of the Cheyenne Wells ranch. We find this scenario implausible.

thereof, expressing the consideration, be in writing, *and be subscribed* by the party by whom the lease or sale is to be made." (Emphasis added.) Kay suggests that the corporate minutes of the first meeting of the directors of DorKay, Inc. are sufficient for this purpose. We disagree. Dorsey signed the corporate minutes in his capacity as "President" and "Temporary Chairman." He never signed them in his individual capacity. It is incumbent upon one seeking to extend personal liability to a corporate officer for corporate debt, to show that the officer intended to be personally bound or that the creditor was looking to the officer as guarantor of the debt. Trident Construction v. West Electric, 105 Nev. 423, 428, 776 P.2d 1239, 1242 (1989) (corporation officer's signature, without statement acknowledging he was acting for corporation, was insufficient to support finding of personal guarantee for debt of corporation); Gross v. Lamme, 77 Nev. 200, 204-205, 361 P.2d 114, 116 (1961) (where instrument contains signature words indicating that subscriber is signing on behalf of principal, or in a representative capacity, subscriber is not liable on the instrument if duly authorized to sign). Therefore, we conclude that because Dorsey was the owner and alleged seller of the land in question, his signature as an individual was required.

We also note that although there is evidence indicating that Dorsey intended to transfer the property to the corporation, such evidence is insufficient and does not establish an intent to be bound by a contract. Kay's efforts appear to be an attempt to compel conveyance of an inter vivos gift rather than to complete a contract. We therefore reverse the order of the district court and remand for further proceedings consistent with this opinion.

YOUNG, J., dissenting:

Respectfully, I dissent. I believe the majority's conclusions that Ms. Kern had no standing to seek relief and that the corporate minutes fail to constitute a contract are erroneous. Because I conclude that there was indeed an enforceable contract, I would affirm the district court's order authorizing the executrix to complete the conveyance.

### Standing

The majority concludes that Ms. Kern, as executrix of the estate, had no interest in seeing the ranch transferred to DorKay, Inc., and, therefore, she had no standing to seek the requested relief. While I do not dispute that it may have been in the interest of the estate to retain the property in the trust, it is also in the interest of the estate to determine the precise composition of the estate. Surely, Ms. Kern should not be penalized for seeking an order that would legally determine the property in the estate. Not

only does the estate have an interest in the proper resolution of any questions, it would appear to be sound public policy to encourage an executrix to promptly seek an order determining assets in an estate if there is a dispute. Perhaps the majority is disturbed by the appearance of a conflict of interest that Ms. Kern may have as the executrix. If this is indeed the case, a discussion of standing does little to help settle the underlying dispute. I respectfully submit that Ms. Kern had standing to request the relief.

### The Existence of a Contract

In support of its conclusion that the corporate minutes fail to constitute a contract to transfer the ranch to DorKay, Inc., the majority states that Mr. Dorsey Kern did not sign the minutes in an individual capacity, but rather as the president and temporary chairperson of DorKay, Inc. I am unaware of any requirement under NRS 111.210(1) that Mr. Kern must have signed the contract as an individual. The majority cites cases which do not address this issue and are inapposite in this instance.

The majority next concludes that the evidence does not indicate an intent on the part of Mr. Kern to enter into a contract, but rather merely indicates an intent to transfer his property to DorKay, Inc. I venture the suggestion that this semantic splitting of hairs is premised on faulty logic. The *subject* of the offer concerned the transfer of Mr. Kern's ranch to DorKay, Inc. If there was an intent to transfer the ranch for certain consideration, it would seem to follow that there was an intent to enter into a contract.

I note that the corporate minutes contain the following language:

> The chairman suggested that the meeting consider the *proposal* of DORSEY A. KERN and KAY F. KERN, said proposal being as follows: to *transfer* all of their right title and interest in and to that certain ranch at Cheyenne Wells, Colorado, known as the Cheyenne Wells Ranch. After *due consideration* of the *offer* and by unanimous vote, the following resolution was adopted:
> WHEREAS, DORSEY A. & KAY F. KERN has [sic] *offered* to *transfer* this corporation, upon the terms and conditions as more fully appears in the *offer* which has been heretofore set forth in these minutes *in return* for the issuance to DORSEY A. and KAY F. KERN, or [sic] of 2500 shares of capital stock of said corporation. . . .

(Emphasis added.) Intent is a necessary element for the formation of a contract. The above-quoted language contains all of the

requisite elements of a contract, an agreement which creates an obligation: intent, offer, acceptance, consideration, mutuality of agreement and obligation. Restatement of Contracts §§ 19-24 (1932); Lamoureux v. Burrillville Racing Ass'n, 161 A.2d 213, 215 (R.I. 1960). Thus, considering exclusively the language and the terms of the corporate minutes, I conclude that there was an enforceable contract.

Considering the events and the conduct of Mr. Kern before his death, I am further persuaded that ample evidence of an intent to be bound existed. Apparently, the learned trial judge was likewise convinced. DorKay, Inc., took possession of and managed the ranch. The corporation received income from the farming, grazing and oil operations of the ranch and paid expenses associated with these operations. Furthermore, the corporation paid property taxes on the ranch and listed the ranch as an asset in its 1988 corporate tax return. Moreover, Mr. Kern instructed an accountant to establish and maintain separate books of account for the corporation and retained an attorney to prepare the deeds in order to transfer the ranch to the corporation.

All of these facts support one conclusion: Mr. Kern intended the transfer of the ranch, treated the ranch as if it had been transferred, and directed an attorney to effect a formal transfer. These facts comprise a prima facie case for part performance which obviates the requirement that the agreement satisfy the statute of frauds. Hence, even if the corporate minutes fail to satisfy the statute of frauds, the doctrine of part performance dispenses with the requirements of the statute. *See* Summa Corp. v. Greenspun, 96 Nev. 247, 253, 607 P.2d 569, 572 (1980).

Turning to the issue of consideration, my brethren in the majority conclude that consideration was lacking because the 2,500 shares of stock exchanged for the ranch were worthless. This conclusion is flawed in two respects. First, it ignores the fact that the corporation treated the ranch as its asset. When Mr. Kern entered into the contract, the DorKay, Inc., stock had expectancy value resulting from the anticipated transfer of the ranch, and, consequently, the corporate stock had value. Second, it fails to take into account that Mr. Kern obviously wanted DorKay, Inc., and not himself, to own the ranch in question. Ms. Kern testified at trial that Mr. Kern wanted to transfer ownership to the corporation because he thought this arrangement would make it harder for his children to obtain the ranch. Our role is not to pass judgment on the merits of Mr. Kern's reasons, but rather to review the legal issues on appeal. The consideration to Mr. Kern, the owner of the ranch prior to the contract, was a subsequent change in ownership of the ranch, in addition to the stock certificates.

*Conveyance to Complete Contract (NRS 149.110)*

The majority incorrectly determines that the elements of NRS 149.110 are not met because Mr. Kern, if living, could not have been compelled to make the conveyance. On the contrary, as an officer of the corporation, Ms. Kern could have brought an action on behalf of the corporation compelling Mr. Kern to convey the ranch. Accordingly, I conclude that the elements of NRS 149.110 are met.

Finally, I wish to note that, after an evidentiary hearing, the district court found that Mr. Kern had the intent to complete the conveyance at the time of his death. It has long been recognized that we will not disturb a trial court's findings of fact unless they are clearly erroneous. Hermann v. Varco-Pruden Buildings, 106 Nev. 564, 566, 796 P.2d 590, 591-92 (1990); Pink v. Busch, 100 Nev. 684, 688, 691 P.2d 456, 459 (1984). As I stated above, there exists ample evidence in the record to support the district court's findings of fact. I cannot join with my brothers in their eager willingness to re-weigh the facts of this case and in essence to perform the function of the trial court. Moreover, in doing so, the majority reaches a result which, I submit, is contrary to the evidence.

For the foregoing reasons, I respectfully dissent.