MYRTIS McCORQUODALE, as Administratrix of the
Estate of FELTON D. McCORQUODALE,
Deceased, Appellant, v. HOLIDAY, INC., a Nevada
Corporation, Respondent.

No. 7144

February 6, 1974                    518 P.2d 1097

[Rehearing denied March 14, 1974]

*Wiener, Goldwater & Galatz, Ltd., Guild, Hagen & Clark,
Ltd.,* and *Thomas J. Hall,* of Las Vegas, for Appellant.

*Bradley & Drendel, Ltd.,* of Reno, for Respondent.

**O P I N I O N**

By the Court, ZENOFF, J.:

Thomas C. Moore and Austin Hemphill became owners of the Holiday Hotel in Reno, the trade name for Holiday, Inc., which included a casino entity known as Carda Hotels, Inc. Felton McCorquodale was in charge of the poker game operated in the casino. He had a family history of early death from heart condition and was already very ill at the time the events that led to this litigation took place.

Concerned for the welfare of his wife should he die, he entered into two deals, one documented with Carda for the purchase of a small percentage of the casino operation and another, undocumented, for the purchase of a three percent ownership in Holiday, Inc. For each transaction, McCorquodale executed a promissory note for the agreed price. The notes together with the certificates showing the number of shares in the respective corporations were placed in the possession of the Valley National Bank for safekeeping. The agreement in each case was that when McCorquodale paid his obligation the certificate already made out in his name would be delivered to him. The transaction in Carda was completed and there is no issue as to it.

However, the Holiday obligation fell due shortly after McCorquodale died and the bank having received no payment on the note prior to the due date of April 1, 1970 delivered

the stock in Holiday, Inc. to Moore's representative. The certificate was then cancelled by the corporation.

Appellant does not challenge the trial court's finding that the Holiday note was never paid, but instead alleges that Moore held a security interest in the stock which was destroyed when he wrongfully resorted to the security by transferring it to the corporation for cancellation. Whether Moore held a security interest in the Holiday stock which was the subject of the purchase agreement between Moore and McCorquodale is the decisive issue on appeal.

Appellant seeks to convert this transaction into a silk purse from a sow's ear by arguing that the Moore-McCorquodale agreement was a secured transaction.

A security interest under the Uniform Commercial Code will not attach until there is (1) an agreement that it attach, (2) value is given, and (3) the debtor has rights in the collateral. NRS 104.9204; Bramble Transportation Inc. v. Sam Senter Sales, Inc., 294 A.2d 97, 10 UCC Rep. 939 (Del. Super. 1971). An initial requirement for the creation of a security interest is absent in this case. McCorquodale's promissory note does not contain language creating a security interest and the evidence fails to establish an agreement, either oral or written, which would give rise to an implication that a security interest in the stock was ever created.

The trial court concluded that the stock was to be retained in Moore's possession and that it would not be delivered to McCorquodale until the note was paid in full not later than April 1, 1970. If the note were not paid at that time, Moore was to retain the stock. A promisor's purpose in attaching a condition precedent to his promise and the legal effect in doing so is to narrow the promisor's obligation so that he will not have to perform if the event fails and can never happen. Simpson on Contracts, § 144 (2d ed. 1965). The trial court's finding that the agreement between Moore and McCorquodale was one subject to a condition precedent receives substantial support in the record and will not be disturbed on appeal. Schieve v. Warren, 89 Nev. 268, 510 P.2d 1367 (1973).

Furthermore there is no evidence that McCorquodale received any rights in the stock which are alleged to have served as collateral. In Nevada the purchaser of a security

acquires upon delivery the rights in the security which his transferor had or had actual authority to convey. NRS 104.-8301. Delivery to a purchaser may occur when he or a person designated by him acquires possession of the security. NRS 104.8313. The record is devoid of evidence of delivery to McCorquodale or his agent. The fact that the stock was issued in McCorquodale's name is alone insufficient to establish delivery. Without delivery McCorquodale had no rights in the stock nor would he receive any rights in the form of remedies until he or his estate tendered payment of the purchase price.

We therefore find that Moore retained ownership of the stock and was entitled to return the certificate to the corporation for cancellation when the appellant failed to tender payment on the due date.

Affirmed.

THOMPSON, C. J., and MOWBRAY, GUNDERSON, and BATJER, JJ., concur.