GREGORY HETTER, M.D., Petitioner, *v.* THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, in and for the County of Clark, and The Honorable LEE GATES, District Judge, Respondent, MARGARET SANCHEZ, Real Party in Interest.

No. 23453

May 19, 1994                                    874 P.2d 762

*Pearson & Patton,* Las Vegas, for Petitioner.

*Louis P. Sanchez,* Las Vegas, for Real Party in Interest.

# OPINION

By the Court, SHEARING, J.:

This petition for a writ of mandamus or prohibition challenges a discovery order of the district court.

Real Party in Interest, Margaret Sanchez ("Sanchez") filed a complaint for invasion of privacy and for violation of her right of publicity under NRS 598.980-.988 against her plastic surgeon ("Hetter") for using her before-and-after pictures on brochures without her consent. Hetter alleges that Sanchez consented to the publication in return for which he reduced the cost of her second surgery. In discovery proceedings the district court ordered that the plastic surgeon provide his attorney with a list of his former and present patients since September 1990. The order required the attorney to send a letter to these patients stating "the nature of the case" and asking them to call the attorney "if they recall the subject publications." The order also required the attorney to submit the patient list to the court for *in camera* verification that the letters were mailed. The district court also ordered that Hetter disclose to plaintiff "that portion of his tax returns which show[s] the profits and losses of his medical practice."

Hetter then filed this petition for relief, challenging the orders on the ground of physician-patient privilege and lack of relevancy.

Generally, extraordinary writs are not available to review discovery orders. Clark County Liquor v. Clark, 102 Nev. 654, 659, 730 P.2d 443, 447 (1986). However, writs have issued to prevent improper discovery in two situations where disclosure would cause irreparable injury: (1) blanket discovery orders without regard to relevance and (2) discovery orders requiring disclosure of privileged information. *Id.* The discovery order in this case involves both of these issues.

This discovery order seeks to intrude into one of the most private areas of a person's existence—his relationship with his doctor. The privacy of this relationship has been recognized in our law. NRS 49.225 states:

> General rule of privilege. A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications among himself, his doctor or persons who are participating in the diagnosis or treatment under the direction of the doctor, including members of the patient's family.

516

Both the physicians and the courts are obligated to respect this privilege, unless there are overriding public policy considerations.

Statutes giving a privilege to communications between physicians and their patients are intended to inspire confidence in the patient and to encourage him to make a full disclosure to the physician as to his symptoms and condition by preventing the physician from making public information that would result in humiliation, embarrassment, or disgrace to the patient. The patient should be able to rest assured with the knowledge that the law recognizes the communication as confidential, and guards against the possibility of his feelings being shocked or his reputation tarnished by subsequent disclosure. 81 Am. Jur. 2d *Witnesses* § 438 (1992) (with cases cited therein). The rules of evidence governing privileged matters at trial also govern such matters when they arise during discovery, and whenever a claim of privilege would be proper at trial, it is proper at the discovery stage. *See Clark County Liquor,* 102 Nev. at 659-60, 730 P.2d at 447.

The disclosure of a patient's name does not necessarily violate the doctor-patient privilege. However, when the circumstances are such that the nature of the problem or treatment is disclosed by disclosure of the name, the name is also privileged. Marcus v. Superior Court, 18 Cal. App. 3d 22 (1972). Certainly here we know that the disclosure of a patient's name discloses that plastic surgery is involved. Most people (as even Sanchez admits) would regard the fact that they had or are considering a facelift, a hair transplant or a breast augmentation as a confidential matter they would not want disclosed.

In the context of malpractice suits, the courts considering the issue have uniformly held that the names of other patients to whom the physician has given similar treatment may not be obtained through discovery. Dag E. Ytreberg, Annotation, *Discovery, In Medical Malpractice Action, Of Names Of Other Patients To Whom Defendant Has Given Treatment Similar To That Allegedly Injuring Plaintiff,* 74 A.L.R.3d 1055 (1976). In a malpractice case a compelling argument may be made that the names of other patients treated for similar conditions are highly relevant, but the courts have consistently refused to allow disclosure of the names of those patients, giving priority to the doctor-patient privilege. In *Marcus,* the court rejected the argument that discovery of the names should be allowed because patients are

still free to invoke the privilege not to discuss the matter. 18 Cal. App. 3d at 25. Sanchez makes a similar argument that the other patients' participation in any subsequent discussion is voluntary. This does not obviate the fact that confidential information about the patients would already have been disclosed to the attorney and to the court in violation of the patients' privilege and that the patients receiving the brochure would have lost confidence in the discretion of their doctor.

The only issue on which the patient information could conceivably be relevant is on the issue of damages. Sanchez alleges that she is entitled to the profits that Hetter obtained by the unauthorized use of her picture on the theory of unjust enrichment. The two causes of action Sanchez alleges are invasion of her common law right of privacy and her right of publicity under NRS 597.810 (formerly NRS 598.988).

This court has recently offered some guidance on these causes of action, including damages available, as they are recognized in Nevada. PETA v. Berosini, 110 Nev. 78, 867 P.2d 1121 (1994). In *PETA* this court recognized the four torts of privacy set forth in Restatement (Second) of Torts § 652A as follows:

> The four species of privacy tort are: (1) unreasonable intrusion upon the seclusion of another; (2) appropriation of the name or likeness of another; (3) unreasonable publicity given to private facts; and (4) publicity unreasonably placing another in a false light before the public.

110 Nev. at 92–93, 867 P.2d at 1130. Sanchez's allegations clearly fall within the category of "appropriation of the name or likeness of another." *Id.* At least that is the basis for Sanchez's claim that she is entitled to Hetter's profits from each of the surgeries he performed as a result of his patients' seeing Sanchez's picture.

Recognizing the confusion that has surrounded this tort, this court in *PETA* described and clarified it as follows:

> The common law appropriation tort ordinarily involves the unwanted and unpermitted use of the name or likeness of an *ordinary, uncelebrated* person for advertising or other such commercial purposes, although it is possible that the appropriation tort might arise from the misuse of another's name for purposes not involving strictly monetary gain. . . . The appropriation tort seeks to protect an individual's personal interest in privacy; the personal injury is measured in terms of the mental anguish that results from the appropriation of an ordinary individual's identity.
> . . . [t]he invasion of privacy . . . is a personal injury, an

injury that is redressable by general damages for the mental anguish and embarrassment suffered by reason of the unwanted public use of the private person's name.

110 Nev. at 100-101, 867 P.2d at 1134-1135.

Clearly, under this tort, Sanchez's damages are totally unrelated to any information she may glean from Hetter's other patients. The damages are personal to her, reflecting the effect on her.

The other cause of action Sanchez alleges is the violation of her right of publicity, which in this state has been codified in NRS 597.770 to 597.810 (formerly NRS 598.980-598.988).

In *PETA*, this court described the right of publicity tort as follows:

The right of publicity tort, on the other hand, involves the appropriation of a *celebrity's* name or identity for commercial purposes. . . . The right to publicity seeks to protect the *property* interest that a celebrity has in his or her name; the injury is not to personal privacy, it is the economic loss a celebrity suffers when someone else interferes with the property interest that he or she has in his or her name.

. . . When . . . the name of a famous or celebrated person is used unauthorizedly, that person's main concern is not with bruised feelings, but rather, with the commercial loss inherent in the use by another of the celebrated name or identity. The commercial or property interest that celebrities have in the use of their names and identities is protected under what has been termed the "right of publicity."

There is a certain reciprocity between the two kinds of interests, personal and proprietary; and, accordingly, the more the aspects of one tort are present, the less likely are the aspects of the other tort to be present. The more obscure the plaintiffs are, the less commercial value their names have and the more such plaintiffs will be seeking to redress *personal* interests in privacy in a common law appropriation action, and not commercial or *property* interests in their name or likeness as a claimed violation of a right of publicity. The more famous and celebrated the plaintiffs, the less injury is likely to be claimed to their privacy interests, their interest in being "left alone," because their names and likenesses already have wide recognition and are not appropriate subjects for invasions of personal privacy. Generally speaking, a private person will be seeking recovery for the appropriation tort, and a celebrity will be recovering for the right of publicity tort.

110 Nev. at 100-100, 867 P.2d at 1134-1135.

The Nevada statute has not limited the cause of action to celebrities, but the damages recoverable under NRS 597.810 are: "(1) Actual damages, but not less than $750; and (2) Exemplary or punitive damages, . . ." Sanchez argues that she needs the patient list because she is entitled to $750 for each of Hetter's patients who saw her picture. There is nothing in the statute or legislative history to suggest that this is a correct interpretation. It seems clear that what the legislature intended was to allow plaintiffs a minimum of $750 in damages even if no actual damages could be proven in order to discourage such appropriation. This statute provides a complete and exclusive remedy for the right of publicity tort. *PETA,* 110 Nev. at 103, 867 P.2d at 1136. Restitution is not available under this statute as Sanchez's damages would be limited to the commercial value of the use of her likeness, or what she could have received for sale of her before-and-after pictures. Thus, Hetter's patient information and tax return are irrelevant to the issue of compensatory damages in this action.

The district court also ordered Hetter to provide Sanchez "that portion of his tax returns which show the profits and losses of his medical practice." In view of the above analysis regarding Sanchez's measure of damages, the information from the tax returns is irrelevant on the issue of compensatory damages. However, Sanchez also seeks punitive damages, and a defendant's financial condition is a proper subject of discovery on that issue. There are many circumstances under which discovery of income tax returns are clearly appropriate. *See* Annotation, *Discovery And Inspection Of Income Tax Returns In Actions Between Private Individuals,* 70 A.L.R.2d 240 (1960). However, because of the policy considerations of protecting taxpayer privacy and encouraging the filing of full and accurate tax returns, both state and federal courts have subjected discovery requests for income tax returns to a heightened scrutiny, especially in the context of requests for punitive damages. In Maresca v. Marks, 362 S.W.2d 299, 301 (Tex. 1962), the Supreme Court of Texas stated:

> The protection of privacy is of fundamental—indeed, of constitutional—importance. Subjecting federal income tax returns of our citizens to discovery is sustainable only because the pursuit of justice between litigants outweighs protection of their privacy. But sacrifice of the latter should be kept to the minimum, and this requires scrupulous limitation of discovery to information furthering justice between

the parties which, in turn, can only be information of relevancy and materiality to the matters in controversy.

In Shaver v. Yacht Outward Bound, 71 F.R.D. 561, 564 (N.D. Ill. 1976), a federal district court stated:

> [F]ederal courts have been cautious in ordering the disclosure of tax returns insisting, at the very least, that it reasonably appear they are relevant and material to the matters in issue. In most instances, it has been held that production of a tax return should not be ordered unless there appears to be a compelling need for the information it contains, such as is not otherwise readily obtainable.

(Citations omitted.)

Some courts have even held that liability must be established before the plaintiff is allowed access to a defendant's income tax returns. In Suozzi v. Parente, 554 N.Y.S.2d 617 (N.Y. App. Div. 1990), for instance, a defamation plaintiff was not entitled to discovery of the defendant's income tax returns in support of a punitive damages claim until the issue of liability was resolved in the plaintiff's favor. In Eastern Auto Distributors v. Peugeot Motors, Etc., 96 F.R.D. 147, 148 (1982), a United States district court held that while courts have not recognized the existence of a general privilege against disclosure of tax returns, "a 'qualified' privilege emerges from the case law that disfavors the disclosure of income tax returns as a matter of general federal policy." *See* William A. Edmundson, Note, *Discovery Of Federal Income Tax Returns And The New "Qualified" Privileges,* 5 Duke L.J. 938, 940 (1984).

While this state does not recognize a privilege for tax returns or necessarily require that liability for punitive damages be established before discovery of financial condition, public policy suggests that tax returns or financial status not be had for the mere asking. Claims for punitive damages can be asserted with ease and can result in abuse and harassment if their assertion alone entitles plaintiff to financial discovery. *See* Moran v. International Playtex, Inc., 480 N.Y.S.2d 6, 8 (N.Y. App. Div. 1984). We hold that before tax returns or financial records are discoverable on the issue of punitive damages, the plaintiff must demonstrate some factual basis for its punitive damage claim. Disclosure of Hetter's tax returns at this point is unwarranted.

For the foregoing reasons, we grant the Petition. Accordingly, the clerk of this court shall issue a Writ of Mandamus commanding the district court to vacate that portion of its July 20, 1992

order which would allow discovery of petitioner's patient list and tax returns and to proceed in a manner consistent with the views expressed in this opinion.

ROSE, C. J., and STEFFEN, YOUNG and SPRINGER, JJ., concur.