134 Nev., Advance Opinion 26

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| PEGGY CAIN, AN INDIVIDUAL; JEFFREY CAIN, AN INDIVIDUAL; AND HELI OPS INTERNATIONAL, LLC, AN OREGON LIMITED LIABILITY COMPANY, Appellants, vs. RICHARD PRICE, AN INDIVIDUAL; AND MICKEY SHACKELFORD, AN INDIVIDUAL, Respondents. | No. 69333 FILED APR 12 2018 ELIZABETH A. BROWN CLERK OF SUPREME COURT BY_____ CHIEF DEPUTY CLERK |
| PEGGY CAIN, AN INDIVIDUAL; JEFFREY CAIN, AN INDIVIDUAL; AND HELI OPS INTERNATIONAL, LLC, AN OREGON LIMITED LIABILITY COMPANY, Appellants, vs. RICHARD PRICE, AN INDIVIDUAL; AND MICKEY SHACKELFORD, AN INDIVIDUAL, Respondents. | No. 69889 |
| PEGGY CAIN, AN INDIVIDUAL; JEFFREY CAIN, AN INDIVIDUAL; AND HELI OPS INTERNATIONAL, LLC, AN OREGON LIMITED LIABILITY COMPANY, Appellants, vs. RICHARD PRICE, AN INDIVIDUAL; AND MICKEY SHACKELFORD, AN INDIVIDUAL, Respondents. | No. 70864 |

Consolidated appeals from a district court summary judgment and post-judgment orders awarding attorney fees and sanctions in a

18-14020

contract and tort action. Ninth Judicial District Court, Douglas County; Thomas W. Gregory, Judge.

*Affirmed in part, reversed in part, and remanded.*

Lemons, Grundy & Eisenberg and Robert L. Eisenberg, Reno; Matuska Law Offices, Ltd., and Michael L. Matuska, Carson City,
for Appellants.

Oshinski & Forsberg, Ltd., and Mark Forsberg, Carson City,
for Respondents.

---

BEFORE HARDESTY, PARRAGUIRRE and STIGLICH, JJ.

### OPINION

By the Court, STIGLICH, J.:

In these appeals, we consider whether one party's material breach of a contract releases the non-breaching party's contractual obligation to a third-party beneficiary. We conclude that it does. Because the promisor in this case failed to fulfill its contractual obligations to appellants under a settlement agreement, respondents as third-party beneficiaries were not entitled to the contract's release from liability. We therefore reverse the district court's orders granting summary judgment and other relief and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

Appellants Peggy and Jeffrey Cain, as owners of Heli Ops International, entered into a joint venture agreement (JVA) with C4 Worldwide, Inc. The JVA provided that Heli Ops would loan $1,000,000 to C4 for the purpose of acquiring and then leveraging Collateralized



Mortgage Obligations (CMOs). In return, Heli Ops would receive the first $20,000,000 in profits from C4's leveraging of the assets, while retaining a 49 percent security interest in the CMOs until C4 had paid out that amount. The Cains transferred $1,000,000 to C4, but C4 did not distribute any profits to the Cains.

The Cains subsequently entered into a "Settlement Agreement and Release of All Claims" with C4 and its CEO. In the Settlement Agreement, C4 agreed to pay the Cains $20,000,000 "no later than 90 days from February 25, 2010." In return, the Cains agreed to release C4 and its officers from any liability for C4's "financial misfortunes and resultant inability to timely pay." The Agreement further provided that California law governed its construction and interpretation and that the prevailing party in any action arising under the Settlement Agreement would be entitled to fees and costs.

C4 failed to pay $20,000,000 by the date specified in the Settlement Agreement. Consequently, the Cains sued C4 and six of its officers, including the respondents in this case: Richard Price and Mickey Shackelford. The Cains alleged breach of the Settlement Agreement, fraud, civil conspiracy, negligence, conversion, and intentional interference with contractual relations. After extended litigation, the district court awarded default judgment against C4, its CEO, and two other C4 officers on all claims in the amount of $20,000,000, plus costs and fees. Following the default judgment, only Price, Shackelford, and a third officer remained as defendants. The third officer subsequently settled with the Cains.

Price and Shackelford moved for summary judgment, claiming that the Settlement Agreement released them from liability for C4's actions and precluded the Cains' suit. The Cains opposed, arguing that the

Settlement Agreement was invalid for lack of consideration. The district court granted summary judgment to Price and Shackelford, reasoning that the Settlement Agreement was supported by consideration and that the Cains bound themselves to that Agreement's release provision when they elected to seek damages for C4's breach of contract.

The Cains appeal from that order granting summary judgment. They also appeal several interlocutory and post-judgment orders, as described further below.

## DISCUSSION

*The district court erred in granting summary judgment because the Cains are not bound by the Settlement Agreement's release provision*

The Cains argue that summary judgment was inappropriate for two reasons. First, the Cains argue that the Settlement Agreement was invalid, so the release provision had no effect. Second, the Cains argue that, even if the Settlement Agreement was valid, C4's material breach of that Agreement released the Cains from their obligation under that Agreement not to sue C4's officers. Reviewing the district court's order granting summary judgment de novo, *see Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005), we conclude that summary judgment was improper.

### *The Settlement Agreement was a valid contract*

The Cains first argue that the Settlement Agreement does not release Price and Shackelford from liability, because the Settlement Agreement was invalid for lack of consideration.[1] They argue that the

---

[1] The Cains also argue that the Settlement Agreement is invalid due to fraud in the inducement. The facts underlying this issue were not adequately developed at the district court level for this court to review.

Settlement Agreement merely acknowledged C4's preexisting obligation to pay the Cains $20,000,000 and thus provided no consideration to the Cains in exchange for the release of liability. We disagree and affirm the district court's ruling that the Settlement Agreement was supported by consideration—namely, removal of a condition precedent to payment.

To be legally enforceable, a contract "must be supported by consideration."[2] *Jones v. SunTrust Mortg., Inc.*, 128 Nev. 188, 191, 274 P.3d 762, 764 (2012). "Consideration is the exchange of a promise or performance, bargained for by the parties." *Id.* A party's affirmation of a preexisting duty is generally not adequate consideration to support a new agreement. *See Cty. of Clark v. Bonanza No. 1*, 96 Nev. 643, 650, 615 P.2d 939, 943 (1980). However, where a party's promise, offered as consideration, differs from that which it already promised, there is sufficient consideration to support the subsequent agreement. 3 *Williston on Contracts* § 7:41 (4th ed. 2008).

When contracting, a promisor may incorporate into the agreement a "condition precedent"—that is, an event that must occur before the promisor becomes obligated to perform. *McCorquodale v. Holiday, Inc.*, 90 Nev. 67, 69, 518 P.2d 1097, 1098 (1974). An implicit condition precedent can be inferred from a contract's terms and context, even when the contract

---

[2]We note that the Settlement Agreement's choice-of-law clause potentially raises a question as to whether California law or Nevada law governs this and other issues in this case. However, neither party's briefings address this choice-of-law issue; they both cite Nevada caselaw as governing, as does the district court's relevant orders. Therefore, we treat the choice-of-law provision as waived by mutual consent of both parties and apply Nevada law throughout this opinion.

does not explicitly so provide. *Las Vegas Star Taxi, Inc. v. St. Paul Fire & Marine Ins. Co.*, 102 Nev. 11, 12, 714 P.2d 562, 562 (1986).

Here, the JVA provided that C4 would pay the Cains "[t]he first twenty million USD ($20,000,000) received from the proceeds and profits of leveraging the CMOs." Implicit in that statement is that there must be $20,000,000 in "proceeds and profits" for the Cains to receive that money. Thus, the existence of $20,000,000 in "proceeds and profits" was a condition precedent to the Cains receiving $20,000,000 from C4.[3]

The Settlement Agreement, by contrast, contains no condition precedent. It unconditionally obligates C4 "to pay the sum of $20,000,000, plus all accumulated interest, to Cains no later than 90 days from February 25, 2010." Thus, the effect of the Settlement Agreement was to remove the condition precedent from C4's $20,000,000 obligation. Elimination of that condition precedent constitutes adequate consideration for the Settlement Agreement to be legally enforceable. *See Jones*, 128 Nev. at 191, 274 P.3d at 764. Therefore, the district court correctly held that the Settlement Agreement was a valid contract.

*C4's breach of the Settlement Agreement releases the Cains from their obligation under that Agreement*

The Cains next contend that, assuming the Settlement Agreement was a valid contract, the district court nonetheless erred in holding that the Settlement Agreement released Price and Shackelford

---

[3]At oral argument before this court, the Cains' counsel argued that, the JVA's language notwithstanding, a promissory note attached to the JVA unconditionally obligated C4 to pay $20,000,000. That argument is untenable given this language within the promissory note: "C4 . . . promises to pay . . . the amount of Twenty Million USD . . . *as per the terms specified in the Joint Venture Agreement.*" (Emphasis added.)

from liability. In particular, they attack the district court's conclusion that the Cains bound themselves to the terms of the Settlement Agreement when they declined to rescind that Agreement and instead sought damages for C4's breach. The Cains argue that their suit for damages does not bind them to the terms of the Settlement Agreement. We agree with the Cains.

When parties exchange promises to perform, one party's material breach of its promise discharges the non-breaching party's duty to perform. Restatement (Second) of Contracts § 237 (Am. Law Inst. 1981). If the non-breaching party's duty was to a third-party beneficiary, the same principle applies: the breaching party's "failure of performance" discharges the beneficiary's right to enforce the contract.[4] *Id.* at § 309(2) & cmt. b. Moreover, a material breach of contract also "gives rise to a claim for damages." *Id.* at § 243(1). Thus, the injured party is both excused from its contractual obligation *and* entitled to seek damages for the other party's breach. *See id.* § 243 cmt. a, illus. 1.

Here, the Settlement Agreement was an exchange of one promise to perform for another promise to perform. That is, C4 promised the Cains $20,000,000 in exchange for the Cains' promise to release C4's officers from liability for C4's conduct. The Cains were bound by their promise until C4 materially breached the contract 90 days after February 25, 2010, the date on which C4's $20,000,000 was due. At that point, the

---

[4]While there are several possible exceptions to this rule—for example, where the beneficiary changes its position in reliance on the agreement, or where the contract expressly or implicitly guarantees a beneficiary's right regardless of other parties' performance, *see* Restatement (Second) of Contracts § 309 cmt. b—the facts of this case do not implicate those exceptions.

Supreme Court
of
Nevada

(O) 1947A

Cains were released from their promise not to sue C4's officers. *See id.* at § 309(2).

The complication in this case stems from the $20,000,000 default judgment previously awarded to the Cains. In briefing before the district court, the Cains elected to enforce that default judgment and rejected the possibility of rescinding the Settlement Agreement. Based on those facts, the district court reasoned that the Cains elected to honor the Agreement and therefore bound themselves to its terms—namely, the promise not to hold C4's officers liable.

In so reasoning, the district court conflated two remedy concepts: specific performance and damages for total breach of contract. Specific performance requires the parties to perform as they promised in the original agreement. *See Mayfield v. Koroghli*, 124 Nev. 343, 351, 184 P.3d 362, 367-68 (2008) (discussing when it is appropriate for a court to order specific performance). Damages for total breach, by contrast, awards the non-breaching party a monetary award sufficient to place that party in the position it expected to find itself had all parties honored the contract. *See* Restatement (Second) of Contracts § 347.

In the present case, the district court erroneously interpreted the $20,000,000 default judgment to be an order for specific performance. That misinterpretation likely occurred because $20,000,000 would have been the appropriate amount had the district court ordered specific performance. But the Cains never sought specific performance of the Settlement Agreement, and that is not what the district court ordered when it granted default judgment to the Cains. Rather, the district court awarded *damages* for breach of contract, fraud, and other claims. While $20,000,000 may greatly exceed the amount of damages the Cains actually suffered, the

propriety of that amount is not presently before this court. Because the default judgment awarded damages rather than specific performance, it did not bind the Cains to their original promise within the Settlement Agreement. *See* Restatement (Second) of Contracts § 243 cmt. a, illus. 1.

In sum, C4's breach of the Settlement Agreement relieved the Cains of their obligation to Price and Shackelford, third-party beneficiaries under that Agreement. We therefore reverse the district court's order granting summary judgment to Price and Shackelford. We also vacate the district court's order awarding $95,843.56 in attorney fees to Price and Shackelford as prevailing parties. They are no longer prevailing parties, so that award is inappropriate. *See Wheeler Springs Plaza, LLC v. Beemon*, 119 Nev. 260, 268, 71 P.3d 1258, 1263 (2003) (involving the reversal of an award of attorney fees where the district court's judgment on the verdict was overturned).

*The district court abused its discretion when it denied the Cains' motion to compel discovery of Price and Shackelford's personal financial documents*

Prior to the district court's grant of summary judgment, the Cains moved to compel discovery of Price and Shackelford's personal financial documents. The Cains sought those documents as evidence to support their fraud claim against Price and Shackelford. In denying the Cains' request, the district court found that the Cains presented an inadequate factual basis for fraud to support a punitive damages claim, so discovery of personal financial documents was inappropriate under *Hetter v. Eighth Judicial District Court*, 110 Nev. 513, 519-20, 874 P.2d 762, 765-66 (1994).

This court generally reviews discovery orders for an abuse of discretion. *Club Vista Fin. Servs., LLC v. Eighth Judicial Dist. Court*, 128 Nev. 224, 228, 276 P.3d 246, 249 (2012). However, this court reviews

whether a district court has applied the proper legal standard de novo. *Staccato v. Valley Hosp.*, 123 Nev. 526, 530 n.4, 170 P.3d 503, 506 n.4 (2007).

Discovery is proper for any matter that is not privileged and is relevant to the subject matter of the action before the court. NRCP 26(b)(1). However, due to privacy concerns and the potential for "abuse and harassment," a defendant's personal financial information can "not be had for the mere asking." *Hetter*, 110 Nev. at 520, 874 P.2d at 766. To discover that information, a "plaintiff must demonstrate some factual basis for [a] punitive damage claim." *Id.* To succeed on a punitive damage claim in this contractual context, the plaintiff must show by clear and convincing evidence that the defendant was guilty of "oppression, fraud or malice." NRS 42.005(1).

Here, the Cains pursued punitive damages on claims of fraud, civil conspiracy, and conversion. The Cains presented evidence showing that their loan proceeds were distributed to C4 officers rather than being used to purchase CMOs, as per the JVA. While that evidence might not amount to "clear and convincing" evidence that Price and Shackelford committed "oppression, fraud, or malice," NRS 42.005(1), such alleged misuse of funds contrary to the JVA constitutes "some factual basis" for those claims such that discovery was proper. *Hetter*, 110 Nev. at 520, 874 P.2d at 766; *see also Sherwin v. Infinity Auto Ins. Co.*, No. 2:11–CV–00043–JCM–LRL, 2011 WL 4500883, at *3 (D. Nev. Sept. 27, 2011) (distinguishing plaintiffs' burdens at the discovery stage from their burdens at the trial stage). We therefore conclude that the district court improperly denied discovery of Price and Shackelford's personal financial documents.

*The Cains' remaining claims are without merit*

The Cains appeal several additional orders entered by the district court. First, they argue that the district court abused its discretion

Supreme Court
OF
Nevada

(O) 1947A

10

in bifurcating trial and resolving issues of personal jurisdiction and alter ego in a pretrial evidentiary hearing. Reviewing the district court's decision to bifurcate for an abuse of discretion, *see Awada v. Shuffle Master, Inc.*, 123 Nev. 613, 621, 173 P.3d 707, 712 (2007), we find no abuse and therefore affirm.

Second, the Cains appeal post-judgment orders from the district court related to subpoenas and sanctions. In those orders, the district court found that the Cains had abused the discovery process by serving subpoenas on Price and Shackelford after the case was dismissed, so the district court quashed the subpoenas and awarded $9,514 in attorney fees to Price and Shackelford pursuant to NRS 18.010(2)(b) (authorizing courts to award attorney fees for claims "maintained without reasonable ground or to harass the prevailing party"). Having reviewed the court's decisions for an abuse of discretion, *see Bahena v. Goodyear Tire & Rubber Co.*, 126 Nev. 243, 249, 235 P.3d 592, 596 (2010) (stating the standard of review for a district court's order imposing sanctions); *Consol. Generator-Nev., Inc. v. Cummins Engine Co.*, 114 Nev. 1304, 1312, 971 P.2d 1251, 1256 (1998) (same for an order to quash subpoenas), we see no cause to reverse the district court's orders. We agree with the district court's conclusion that there was no "reasonable ground" to serve subpoenas on the defendants after the case was dismissed. NRS 18.010(2)(b). We reject the Cains' argument that our reversal of summary judgment also requires reversal of these post-judgment orders.

While our reversal of the district court's final disposition requires us to reverse a grant of attorney's fees to the extent that the fees were granted *because* a party prevailed,[5] *see Gibby's, Inc. v. Aylett*, 96 Nev. 678, 681, 615 P.2d 949, 951 (1980), we may reverse a district court's final disposition while affirming a district court's award of sanctions pursuant to NRS 18.010(2)(b). Thus, we affirm the district court's order granting Price and Shackelford $9,514 as a litigation sanction against the Cains.

## CONCLUSION

Absent exceptions not relevant here, one party's material breach of a contract discharges the non-breaching party's duty to perform under that contract. In this case, C4's failure to pay the Cains the promised sum released the Cains from their promise not to hold C4's officers liable. Therefore, we reverse the district court's grant of summary judgment and remand this matter to the district court for proceedings consistent with this opinion.

_____, J.
Stiglich

We concur:

_____, J.
Hardesty

_____, J.
Parraguirre

_____

[5]As noted above, we reverse the order granting attorney fees to Price and Shackelford *as prevailing parties*.

