
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>AFFORDABLE PATIOS & SUNROOMS,<br>DBA Reno Patio and Fireplaces,<br>Debtor. | BAP No. NV-22-1063-FTB<br><br>Bk. No. 3:20-bk-50017-NMC<br><br>Adv. No. 3:20-ap-05033-NMC |
| CHRISTOPHER BURKE, Chapter 7<br>Trustee,<br>Appellant,<br>v.<br>LEGACY FIRE SERVICES, LLC,<br>Appellee. | **MEMORANDUM**\* |

Appeal from the United States Bankruptcy Court
for the District of Nevada
Natalie M. Cox, Bankruptcy Judge, Presiding

Before: FARIS, TAYLOR, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Appellee Legacy Fire Services, LLC ("Legacy") submitted a "formal

offer with the intent to purchase" property from appellant Christopher

---

\* This disposition is not appropriate for publication. Although it may be cited for
whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential
value, *see* 9th Cir. BAP Rule 8024-1.

Burke, chapter 7[1] trustee ("Trustee"). Legacy invited the Trustee to contact its representatives to "discuss possible contingencies and further terms of an agreement." The Trustee accepted the proposal and sought court approval of the sale, without attempting to resolve these "possible contingencies and further terms." Legacy refused to purchase the property, arguing that the missing terms meant that there was no valid, enforceable contract. The Trustee sold the property to another buyer for a lower price and sued Legacy for the difference. The bankruptcy court granted summary judgment for Legacy, holding that there were numerous unsettled material terms that precluded contract formation.

The Trustee appeals, arguing that Legacy had presented a binding offer that he accepted and that any missing terms were actually conditions precedent to performance that could be resolved at a later time.

We discern no error and AFFIRM.

## FACTS

**A.  The chapter 7 bankruptcy case**

Affordable Patios & Sunrooms ("Affordable Patios") filed a chapter 7 petition and listed "Reno Patio and Fireplaces" as a name under which it did business. It was also affiliated with a Nevada limited liability company

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

named "Reno Patio and Fireplaces, LLC."

Affordable Patios represented that it did not own any real property. But Reno Patio and Fireplaces, LLC held title to commercial real property located at 910 Glendale Avenue in Sparks, Nevada (the "Property"), which Affordable Patios listed as its principal place of business.

The Trustee was appointed to administer Affordable Patios' estate. In February 2020, he filed an adversary proceeding asserting that all of Affordable Patios' business entities (including Reno Patio and Fireplaces, LLC) were alter egos of each other and seeking substantive consolidation of the entities' assets and debts. He sought a declaration that the Property was property of the estate that the Trustee may use, sell, or lease under § 363.

B.    **Legacy's letter offering to purchase the Property**

Around this time, the Trustee took steps to sell the Property. Legacy reviewed a sales flyer created to market the Property. The sales flyer stated that three buildings were included in the sale.

Legacy contacted the Trustee and expressed an interest in purchasing the Property. On February 14, three members of Legacy, including managing member Michael Glover, met with the Trustee and toured the Property. They could not enter at least one of the buildings because it was unsafe and occupied by squatters. (Although the parties now agree that three buildings are located on the Property, at the time, there was uncertainty as to the number of buildings included in the sale.) The Property also contained vehicles, machinery, and other personal property.

3

Three days later, Mr. Glover e-mailed the Trustee's assistant and indicated that Legacy was interested in making a cash offer to purchase the Property "[that] would be contingent that the three buildings on the property are sold together as shown on the information provided." He closed the e-mail with: "We would like to know what our next steps would be in making a formal offer and the possibility of the purchase." Mr. Glover also sent a text message to the Trustee.

The Trustee did not immediately respond. He did take steps to protect his ability to sell the property and filed a motion for a temporary restraining order seeking to prevent the sale of the Property outside of the bankruptcy court's oversight. The bankruptcy court entered a temporary restraining order on February 24 and set a further hearing on March 3.

On February 26, Mr. Glover again inquired about the status of the Property. The Trustee informed Mr. Glover of the March 3 hearing in the adversary proceeding against Affordable Patios. He stated, "If you want to make me a formal offer on your company's letterhead it will help move this along."[2]

On February 28, Legacy transmitted to the Trustee a one-page letter ("Legacy Letter") on its business letterhead titled "LETTER OF OFFER."

[2] Later, Mr. Glover testified that he understood that the Trustee needed to represent to the bankruptcy court that he had a serious buyer. He said that he only drafted the letter to help the Trustee during the March 3 hearing so that the Trustee could start the process of negotiating a sale. The Trustee similarly testified that it was important to be able to tell the bankruptcy court that he had an offer in hand.

The Legacy Letter referenced "Property at 910 Glendale Ave. Sparks, Nevada" and stated:

> The intent of this letter is to inform you that Legacy Fire Services, LLC located in Sparks Nevada, is interested in purchasing the property referenced above. Please consider this a formal offer with the intent to purchase the three buildings and associated land for a total cash purchase price of:
>
> **$1,458,000.00**
>
> This offer is predicated upon having any and all liens that may be associated with the referenced property satisfied resulting with Legacy Fire having clear title of ownership. We are pleased to submit this offer and hopeful for favorable consideration. Please feel free to contact our office to discuss possible contingencies and further terms of an agreement.

Mr. Glover signed the Legacy Letter as managing member of Legacy.

**C.     The Trustee's response to the Legacy Letter**

On March 3, 2020, the Trustee and Reno Patio and Fireplaces, LLC entered into a stipulation allowing the Trustee to sell the Property. The following day, the Trustee filed a motion to sell the Property free and clear of liens. He represented that he had received an offer for $1,458,000 and attached a copy of the Legacy Letter.

Also on March 4, the Trustee sent a letter ("Trustee Response") to Legacy purporting to accept its offer. The Trustee Response stated:

> This is in response to your letter of February 28, 2020 regarding purchasing the commercial building at 910 Glendale Ave., Sparks, Nevada. Yesterday, the Court gave me

5

permission to accept your offer. Thus, I, as the Trustee, **accept** your offer to purchase 910 Glendale Ave., Sparks, Nevada for $1,458,000.

Currently, there is a hearing scheduled for March 13, 2020 at 10:00 a.m. for the Court to approve the sale of 910 Glendale Ave., Sparks, Nevada to Legacy Fire Services.

My attorney, Michael Lehners, Esq., will be in touch with you soon to explain the next steps in this process. However, in the meantime, if you have any questions please feel free to call me.

The Trustee filed the motion to sell before resolving the additional terms and contingencies. Legacy retained counsel, who contacted the Trustee and took the position that there was no binding contract of sale. The discussions did not resolve the dispute. Legacy objected to the motion, arguing that no valid contract existed because there was no agreement as to all material terms, and thus no meeting of the minds.

The bankruptcy court held a hearing and granted the motion to sell. But its written order provided that it "makes no findings as to whether or not there is or was an enforceable contract between the Trustee and Legacy . . . ."

Legacy refused to consummate the sale. The Trustee found another buyer for the Property a month later. The bankruptcy court approved the sale for $1,350,000, and the sale closed on September 11.

D.    **The adversary proceeding**

In December 2020, the Trustee filed an adversary complaint against

6

Legacy and others. He sought a declaratory judgment directing Legacy to turn over $108,000 to Affordable Patios' estate.

The Trustee asserted two claims for relief. First, he sought turnover under § 542(b), arguing that the parties had entered into "a legally binding contract" that obligated Legacy to purchase the Property for $1,458,000. As such, Legacy owed the estate a debt for $1,458,000; the resale of the Property for $1,350,000 reduced the Trustee's damages to $108,000.

Second, the Trustee asserted unjust enrichment. He alleged that Legacy received an exclusive right to purchase the Property and retained the benefit without paying the sale price.

## E. Legacy's motion for summary judgment

Legacy filed a motion for summary judgment ("Motion"). It argued that the Trustee could not show the existence of a valid contract. It took the position that the Legacy Letter evidenced preliminary negotiations, not a formal offer, and those negotiations "do not constitute a binding contract unless the parties have agreed to all material terms." Legacy contended that it "did not exhibit a manifestation of willingness to enter into a contract whereby an 'acceptance' by the Trustee would leave nothing further to negotiate. There was much more to negotiate and do before a contract could be formed."

Legacy pointed to the language of the Legacy Letter, in which it requested that the Trustee "contact our office to discuss possible contingencies and further terms of an agreement." It claimed that its view

7

was supported by the deposition testimony of Mr. Glover and the Trustee, both of whom testified that they expected further negotiations.[3] Furthermore, there was no meeting of the minds concerning exactly what the Trustee intended to sell, particularly because the number of buildings was unresolved.

Legacy contended that there was no contract because the parties had not agreed to material terms as required by Nevada law. Pursuant to *In re Estate of Kern*, 823 P.2d 275, 277 (Nev. 1991), material terms to a sale of real property include: (1) subject matter; (2) price; (3) payment terms; (4) quantity; and (5) quality. The parties had only agreed on a price; all of the other material terms were unresolved.

---

[3] Mr. Glover said that he was a layman with no experience purchasing commercial property. He stated in his deposition:

> [A]t no point in my wildest dreams would I assume that this would be binding to a contract to where all of a sudden in three days, the Court is going to approve it and we don't have any of our due diligence done, we don't have any of the reports or inspection and we have no idea if we're even getting the three buildings, so we had a freak-out . . . .

Similarly, the Trustee testified:

> Q. Okay. If the bankruptcy court had entered an order on your motion to sell, was it your intent to negotiate other terms of the contract?
>
> A. Other conditions.
>
> Q. What type of conditions, Mr. Burke?
>
> A. When the payment would be made, when did they seek to move in, how long it would take to sell and get the personal property removed, how they were going [to] pay for it. . . . I think those were the main things.

He admitted that he did not discuss these additional conditions with Legacy prior to the hearing on the motion to sell.

Legacy argued that, even if the Legacy Letter was a formal offer, the Trustee Response was not an effective acceptance because it did not mirror the offer: Legacy stated that it wanted to purchase three buildings, but the Trustee Response referenced "the commercial building" in the singular.

Finally, Legacy argued that the unjust enrichment claim failed because the Trustee impermissibly sought to recover under an express, written contract.

The Trustee opposed the Motion. First, he argued that the parties had formed a contract, and the missing material terms that Legacy described were conditions precedent that did not impede contract formation. In other words, contingencies could be inserted into the contract post-formation, and, "[h]ad the Trustee not been able to get rid of the squatters (he did) or had any inspections failed, the contract would have evaporated."[4]

Second, the adversary complaint pled all of the elements of breach of contract, even if there was no specific breach of contract claim.

Finally, the Trustee argued that he had stated a claim for unjust

---

[4] In his declaration attached to the opposition to the Motion, the Trustee stated that he believed that they had reached an agreement but that Mr. Glover would provide him a list of contingencies to include in the contract:

> I expected Mr. Glover to get me a list of what these conditions were, such as pest inspection, mold inspection, removal of the squatters by a certain date, a title search and so on. We both knew we were not using a Realtor, so I felt it was reasonable for him to tell me what he wanted. Should I not be able to fulfill a specified condition, then Legacy would have been released from the contract.

enrichment because "the loss the Trustee suffered was the inability to market the property for the period of time the offer was accepted."

Legacy's reply memorandum pointed out that the Trustee "admits that nonspecific contingencies and other terms were left open for discussion between the parties." Legacy contended that there was no meeting of the minds to support contract formation. Moreover, the "unspecified contingencies" were not conditions precedent, but rather material terms under Nevada law.

After a hearing, the bankruptcy court announced its ruling from the bench. First, it held that the crux of the dispute was an alleged breach of a contract, and although the Trustee had not pled a breach of contract claim, it would liberally construe the complaint to allege such a claim.

Second, the bankruptcy court held that the parties' correspondence did not create a valid, enforceable contract. It recited applicable Nevada law concerning contract formation and stated that "[p]reliminary negotiations do not constitute a binding contract unless the parties have agreed to all material terms. A valid contract cannot exist when material terms are lacking or are insufficiently certain and indefinite." It held that the Legacy Letter and Trustee Response lacked "[a] number of essential terms" including the material provisions that *Kern* holds are necessary to create a valid agreement: "[T]he subject matter of the alleged agreement is not clear. Was the agreement for one building or three buildings? There are also no payment terms nor due dates mentioned, no deposit amount

specific [sic], and the quality of the property was never discussed."

As such, the claim for turnover failed because there was no debt for a breach of contract. The bankruptcy court also held that unjust enrichment was unavailable because the Trustee sought to recover under a written agreement. The court concluded that there was no genuine issue of material fact that would defeat Legacy's motion for summary judgment.

The Trustee timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (E). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in granting Legacy summary judgment on the basis that the Legacy Letter and the Trustee Response did not create an enforceable contract.

## STANDARD OF REVIEW

We review de novo the bankruptcy court's decision to grant or deny summary judgment. *Boyajian v. New Falls Corp. (In re Boyajian)*, 564 F.3d 1088, 1090 (9th Cir. 2009). "De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We employ the same summary judgment standards as the bankruptcy court. Summary judgment should be granted "if the movant

11

shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014) (citing Civil Rule 56(a), made applicable in adversary proceedings by Rule 7056).

Pure questions of law are appropriate for summary judgment. *See Schrader v. Idaho Dep't of Health & Welfare*, 768 F.2d 1107, 1110 (9th Cir. 1985). "Whether the parties have described their essential obligations in sufficiently definite and certain terms to create an enforceable contract presents a question of law that an appellate court reviews de novo." *Grisham v. Grisham*, 289 P.3d 230, 236 (Nev. 2012) (cleaned up).

## DISCUSSION

As the bankruptcy court correctly stated, the dispositive question is whether Legacy and the Trustee agreed to all material terms and formed an enforceable contract. We agree with the bankruptcy court that there is no genuine issue of material fact and that the parties did not agree to all material terms. Summary judgment in favor of Legacy was not error.[5]

## A.    Legacy and the Trustee never formed an enforceable contract.

The Trustee argues that the parties agreed to all material terms for the sale of the Property and that anything left to negotiate was a condition precedent, not a material term. We disagree.

---

[5] For the same reasons, we reject the Trustee's argument that the bankruptcy court should have granted him summary judgment under Civil Rule 56(f).

## 1. Nevada law requires that the parties to a contract have agreed on all material terms.

The parties do not dispute the relevant law governing this case.

Under Nevada law,

> [b]asic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration. With respect to contract formation, preliminary negotiations do not constitute a binding contract unless the parties have agreed to all material terms. A valid contract cannot exist when material terms are lacking or are insufficiently certain and definite. A contract can be formed, however, when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later.

*May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005) (citations omitted).

There is no enforceable contract unless the parties have reached a definite agreement on all material terms:

> [T]o enforce a contract at law, **the offer must be sufficiently definite** or must call for such definite terms in the acceptance, **that the performance required is reasonably certain. In order to be sufficiently definite, the parties must have agreed to all material terms of a contract**. In determining whether a contract or its terms are definite, **an important consideration is whether the court can determine the putative contract's exact meaning and fix the legal liability of the parties**.

*Laguerre v. Nev. Sys. of Higher Educ.*, 837 F. Supp. 2d 1176, 1180-81 (D. Nev. 2011) (cleaned up) (emphases added); *see also Grisham*, 289 P.3d at 235 ("A valid contract cannot exist when material terms are lacking or are

13

insufficiently certain and definite for a court to ascertain what is required of the respective parties and to compel compliance if necessary." (citations and quotation marks omitted)).

The materiality of a term depends on the entire context. "A meeting of the minds exists when the parties have agreed upon the contract's essential terms. Which terms are essential depends on the agreement and its context and also on the subsequent conduct of the parties, including the dispute which arises and the remedy sought." *Certified Fire Prot. Inc. v. Precision Constr.*, 283 P.3d 250, 255 (Nev. 2012) (citations and quotation marks omitted).

In *Kern*, the Nevada Supreme Court provided a nonexclusive list of the material terms of a real estate purchase contract. In that case, the agreement at issue was skeletal, and the court noted that "several essential elements of a valid contract are missing." 823 P.2d at 276. In particular, it stated that "material terms such as **subject matter, price, payment terms, quantity, and quality** are either altogether lacking or insufficiently certain and definite to support specific performance." *Id.* at 277 (emphasis added). The court held that, even though there was evidence that the property owner intended to transfer the property, "such evidence is insufficient and does not establish an intent to be bound by a contract." *Id.*

**2.      The alleged agreement lacked material terms.**

The bankruptcy court did not err in holding that the alleged contract lacked material terms. It considered the five elements listed in *Kern* and

concluded that, while the agreement specified the price, it lacked the remaining four elements.

**Payment terms.** The Legacy Letter said that Legacy was making a "cash offer." The Trustee argues that this statement is sufficient to establish the agreed "payment terms." But the Trustee's own deposition testimony belies this argument. When asked what additional conditions he expected to negotiate with Legacy, he included "[w]hen the payment would be made . . . [and] how they were going [to] pay for it."

In other words, the Legacy Letter and the Trustee Response did not specify whether Legacy would pay for the Property in (say) thirty days or ten years. While the Trustee might have expected Legacy to pay the full purchase price in a lump sum at closing, there was no agreement about the closing date and no agreement to make full payment at that time. The alleged agreement did not "fix [Legacy's] legal liability" to pay for the Property.[6]

---

[6] At oral argument, the Trustee argued that reasonable payment terms were implied in the contract. But a court's power to fill gaps in a contract with reasonable provisions does not permit it to create essential terms to which the parties did not agree. *See Stoddart v. Miller*, 238 P.3d 845, 2008 WL 6070835, at *4 (Nev. 2008) (table) (holding that no enforceable contract existed when the parties had not agreed on essential terms, because, "[w]hile a court may supply certain details for an otherwise substantially complete contract, it cannot enforce a contract that is missing terms essential to its interpretation . . ."); *McCall v. Carlson*, 172 P.2d 171, 187 (Nev. 1946) ("Our equitable powers do not extend so far as to permit us to disregard fundamental principles of the law of contracts, or arbitrarily to force upon parties contractual obligations, terms or conditions which they have not voluntarily assumed.").

**Quality.** The Legacy Letter and the Trustee Response did not address "quality." It is undisputed that the parties never discussed the condition of the Property and any required remedial action. Further, the parties did not discuss or reach an agreement on Legacy's ability to inspect the Property and ascertain its quality before closing. The condition of the Property and inspection rights were particularly important in this case because, due to the presence of the squatters and other dangerous conditions, Legacy had not even seen the interior of one or more of the buildings before making its offer.

**Subject matter and quantity.** The bankruptcy court said that the subject matter of the alleged agreement was not clear, in particular because the number of buildings including in the sale was unclear. The Trustee contends that the sales flyer made it clear that there were three buildings, and the bankruptcy court erred by not considering the sales flyer.

The Trustee is correct that the parol evidence rule[7] did not bar evidence of the sales flyer. However, contrary to the Trustee's assertion, it

---

[7] The parol evidence rule precludes the use of extrinsic evidence to vary the meaning of an agreement that is written, unambiguous, and integrated. *Clark v. JDI Loans, LLC (In re Cay Clubs)*, 340 P.3d 563, 574 (Nev. 2014) ("The parol evidence rule precludes the admission of extrinsic evidence that would change the contract terms when the terms of a written agreement are clear, definite, and unambiguous. It applies only when the contracting parties agree that the written agreement is the final statement of the agreement. The rule does not bar extrinsic evidence that is offered to explain matters on which the contract is silent so long as the evidence does not contradict the agreement's terms." (cleaned up)). Parol evidence is generally admissible, however, to prove the existence or nonexistence of an agreement. *See W. Nat'l Ins. Co. v. Trent*, 247 P.2d 208, 210 (Nev. 1952) ("It is well recognized that parol testimony is admissible [to

is unclear whether or not the bankruptcy court considered the flyer. But even if the court erroneously overlooked it, the error is harmless, because the absence of several other material terms discussed above defeats the Trustee's argument that there was an enforceable contract.[8]

## B. The purported offer and acceptance were an unenforceable "agreement to agree."

The Trustee does not dispute that the parties did not discuss the terms addressed above. Rather, he contends that there was an enforceable contract because he expected that the parties would discuss the missing provisions at a future date. This contention does not help the Trustee's position. In effect, he views the Legacy Letter and Trustee Response as an agreement to agree on the material terms for the sale of the Property. "An agreement to agree on contract terms at a later date is not a binding contract in Nevada." *Diamond Elec. Inc. v. Pace Pac. Corp.*, 346 F. App'x 186, 187 (9th Cir. 2009) (citing *City of Reno v. Silver State Flying Serv., Inc.*, 438 P.2d 257, 261 (Nev. 1968) ("[A]n option agreement which leaves an essential term to future agreement is not enforceable.")); *see Kohlmoos*

---

negative the very existence of such a contract rather than to vary its terms], for the parol evidence rule presupposes a valid and binding agreement."); *Baskin Distrib., Inc. v. Pittway Corp.*, 141 F.3d 1173, 1998 WL 101691, at *4 (9th Cir. 1998) (table) (Under Washington law, "[t]he parol evidence rule does not apply when the parties are seeking to establish the validity or invalidity of a contract.").

[8] While the bankruptcy court did not mention it in its ruling, the parties never discussed another facet of the subject matter of the sale: whether the vehicles, machinery, and other personal property on site were included in the sale.

*Enters. v. Pines, LLC*, 129 Nev. 1131, 2013 WL 5476860, at *1 (2013) (table) ("Nevada abides by traditional jurisprudence that agreements to agree are generally too indefinite to enforce as final agreements."). An alleged agreement to iron out the material terms of the contract at a future date is ineffective to create an enforceable contract.

**C.     The "conditions precedent" were material terms of the contract.**

The Trustee attempts to save the contract by arguing that the missing terms were conditions precedent to performance that could be negotiated after the initial contract formation. The unstated premise of this argument is that "conditions precedent" cannot be "material terms." This premise is incorrect.

A condition precedent "must be performed or happen before a duty of immediate performance arises on the promise which the condition qualifies. A condition precedent is either an act of a party that must be performed or a certain event that must happen before a contractual right accrues or a contractual duty arises." Conditions Precedent, 13 Williston on Contracts § 38:7 (4th ed.). "When contracting, a promisor may incorporate into the agreement a 'condition precedent' – that is, an event that must occur before the promisor becomes obligated to perform. An implicit condition precedent can be inferred from a contract's terms and context, even when the contract does not explicitly so provide." *Cain v. Price*, 415 P.3d 25, 28-29 (Nev. 2018) (citation omitted).

The Trustee offers no authority for the proposition that a "condition

18

precedent" is not a "material term," and we see no reason to accept it. A condition precedent is undoubtedly a contract term, and like any other contract term it may be material depending on the context.[9] In the context of a real estate sale contract, a condition precedent based on, for example, timing of payment or satisfactory inspection of the property is important.

While the Nevada Supreme Court has held that some conditions precedent can be implied, they must be inferred "from a contract's terms and context." *Id.* at 29. Although the Legacy Letter stated that there would be conditions, there is nothing in either the Legacy Letter or the Trustee Response that would allow a court to infer any particular condition precedent.

## CONCLUSION

The bankruptcy court did not err in granting Legacy summary judgment. We AFFIRM.

---

[9] The Restatement (Second) of Contracts observes that the word "condition" has multiple legal meanings. It defines "condition" in the context of a contract as "an event which qualifies a duty under a contract." Restatement (Second) of Contracts § 224 cmt. a (1981). It goes on to say that the contractual language that gives effect to an event (a "condition") is a term of the agreement:

> A contracts to sell and B to buy goods pursuant to a writing which provides, under the heading "Conditions of Sale," that "the obligations of the parties are conditional on B obtaining from X Bank by June 30 a letter of credit" on stated terms. **The quoted language is a term of the agreement, not a condition.** The event referred to by the term, obtaining the letter of credit by June 30, is a condition.

*Id.* § 224 illus. 1 (emphasis added). In other words, the "conditions precedent" that the Trustee admits needed to be negotiated were contractual terms.